**Lynda C. RAY**

v.

**BOARD OF EDUCATION OF the OAK RIDGE SCHOOLS, et al.**

Court of Appeals of Tennessee, Eastern Section, at Knoxville.

Oct. 29, 2001.

Application for Permission to Appeal Denied and Publication Recommended by Supreme Court April 1, 2002.

Richard L. Colbert and Kurtis J. Winstead, Nashville, TN, for appellant, Lynda C. Ray.

James M. Webster, Oak Ridge, Tennessee, and Pamela L. Reeves, Knoxville, TN, for appellees, Board of Education of the Oak Ridge Schools and Randy McCoy, Superintendent of Oak Ridge Schools.

## OPINION

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and CHARLES D. SUSANO, JR., J., joined.

Lynda C. Ray ("Plaintiff"), a teacher, filed a Complaint alleging, among other things, that the Board of Education of the Oak Ridge Schools and its superintendent, Randy McCoy, ("Defendants"), violated the Tennessee Teachers' Tenure Act. Plaintiff alleged Defendants violated the Tennessee Teachers' Tenure Act when they terminated her employment because, according to Plaintiff, she had attained tenure status when reelected for teaching after her third year of service. Defendants and Plaintiff filed motions for partial summary judgment. The Trial Court granted Defendants' motion and denied Plaintiff's motion, finding, in part, that Plaintiff had not attained tenure status because the superintendent had not given notice to the school board ("School Board") of Plaintiff's eligibility for tenure at the end of her probationary period as required by Tenn.Code Ann. § 49-5-504(b). Plaintiff voluntarily dismissed her remaining claims, and the Trial Court confirmed its judgment granting Defendants' motion for partial summary judgment as, therefore, final. Plaintiff appeals. We affirm.

### Background

Lynda C. Ray was employed as a teacher by the Oak Ridge City School System from the 1994-95 school year through the 1997-98 school year. Plaintiff holds both a bachelor's and a master's degree and has qualifications and licensing for teaching general special education in grades 1-12, multiple disabilities in grades K-12, and elementary education grades 1-9. Through one-year contracts, Plaintiff first was hired as a teacher for the 1994-95 school year and was re-employed by the

School Board for the next two school years, 1995–96 and 1996–97.

In early 1997, Plaintiff gave notice to her school's principal that she was scheduled to undergo surgery in February 1997, and thereafter, would have a six-week recuperation at home. On April 11, 1997, the school system's then-superintendent, Dr. Robert J. Smallridge ("Superintendent"), sent a letter ("Waiver") to Plaintiff which stated, in pertinent part, as follows:

> I am approving your re-employment for the 1997–98 school year contingent on your agreement to waive any claim to tenure as a result of your re-employment for the 1997–98 school year. This extension is being offered due to your illness which occurred at a critical time in the evaluation process thus limited somewhat the opportunity for your performance review. An additional year of performance review will allow a better determination of your employment status beyond the 1997–98 school year.

Plaintiff accepted the Superintendent's offer by signing and returning this letter to the Superintendent. Immediately above Plaintiff's signature line, the letter contained the following language:

> I understand that I have been offered re-employment with the Oak Ridge School System for the 1997–98 school year only if I waive and relinquish any claims or rights to tenure as a result of the rehiring. I understand the concept of tenure and freely and willingly state that I will claim no tenure rights if rehired for the 1997–98 school year.

The Board of Education reelected Plaintiff for a teaching position for the 1997–98 school year.

Plaintiff received written notification from the Superintendent on April 7, 1998, that she would not be reelected for employment for the 1998–99 school year. This notice provided, in pertinent part, the following:

> Under the "Continuing Contract Law," we are required to notify non-tenure certified employees who will not be re-employed beyond the current school year. Accordingly, this letter will serve as official notification to you that your contractual agreement with the Oak Ridge Schools will cease at the end of the 1997–98 school year. . . .

Plaintiff filed suit in November 1998, alleging that the Board of Education and its Superintendent ("Defendants") violated the Tennessee Teachers' Tenure Act, found at Tenn.Code Ann. § 49–5–501, *et seq.*, by terminating her employment. Plaintiff claimed she had attained tenure when reelected after her third year of service. Plaintiff also alleged in her Complaint that Defendants breached her contract of employment when Plaintiff's employment was terminated by failing to comply with Tenn.Code Ann. § 49–5–409(b)(2).[1]

Defendants alleged in their Answer that due to Plaintiff's surgery and subsequent six-week medical leave, Plaintiff's evaluation process, scheduled to take place during the 1996–97 school year, was incomplete. Defendants alleged that as a result, Plaintiff's evaluation period was extended. In addition, Defendants alleged that Plain-

---

1. Tenn.Code Ann. § 49–5–409(a) provides:
 Teachers in service and under control of the public elementary and high schools of Tennessee shall continue in such service until they have received written notice, from their board of education or superintendent,

 as appropriate of their dismissal or failure of reelection.
 The statute goes on to set forth the requirements of a notice that a teacher receives regarding his dismissal or failure of reelection. Tenn.Code Ann. § 49–5–409(b)(1)–(2).

tiff had been evaluated by her school's principal upon her return after her leave of absence. The School Board's Assistant Superintendent of Curriculum and Instruction had observed Plaintiff during the 1997–98 school year and indicated that Plaintiff may not be rehired as a teacher.

Defendants filed a motion for partial summary judgment in which they argued they were entitled to judgment as a matter of law because the undisputed material facts showed: (1) Plaintiff never attained permanent tenure status because, upon Plaintiff's completion of her probationary period but prior to Plaintiff's reelection, the Superintendent did not notify the School Board that Plaintiff, if reelected, would attain permanent tenure status; and (2) if Plaintiff did attain tenure status, she waived any rights to tenure by executing the Waiver.

Plaintiff filed a motion for partial summary judgment in which she argued that the undisputed material facts showed she had attained tenure at the end of the 1997–98 school year because she had met the statutory requirements for tenure found at Tenn.Code Ann. § 49–5–503.[2] In her motion, Plaintiff acknowledged there was a statutory requirement that notice had to be given by the Superintendent to the Board of Education regarding her eligibility for tenure under Tenn.Code Ann. § 49–5–504(b). Plaintiff, however, argued that the Superintendent was not legally authorized, by statute or otherwise, to obtain her waiver of tenure. Plaintiff also pointed out that the Superintendent testified in his deposition that the Waiver he used with Plaintiff could be abused if it were repeatedly used to avoid giving tenure.

The Trial Court granted Defendants' motion for partial summary judgment and denied Plaintiff's motion for partial summary judgment. In its Memorandum Opinion issued from the bench and incorporated into its Order, the Trial Court held that Plaintiff had not attained tenure because: (1) Plaintiff executed the Waiver; and (2) the Superintendent had not given the requisite notice to the School Board of Plaintiff's eligibility for tenure before Plaintiff was reelected for her fourth year of service. The Trial Court also held that the purpose of the Waiver was to secure Plaintiff's employment for the next school year in exchange for Plaintiff's agreement to waive tenure. In enforcing the Waiver, the Trial Court held that the Waiver was executed by Plaintiff in a voluntary, arm's length transaction, and that Plaintiff's agreement was not coerced.

Thereafter, due to her remaining claim against Defendants for breach of contract, Plaintiff filed a Tenn. R.App. P. 9 Motion for Permission to Appeal which the Trial Court denied. Plaintiff then filed a Notice of Voluntary Dismissal disposing of her remaining claim. The Trial Court entered a Final Order holding that its previous Order granting Defendants' motion for partial summary judgment was a "final Order since all claims have now been adjudicated." Plaintiff appeals.

### Discussion

On appeal and although not exactly stated as such, Plaintiff makes the following arguments: (1) the Trial Court erred in granting Defendants' motion for partial summary judgment and denying Plaintiff's motion for partial summary judgment because it erroneously held that Plaintiff had not attained tenure when she was dis-

---

**2.** Neither Defendants' nor Plaintiff's motion for partial summary judgment addressed Plaintiff's remaining claim against Defendants for breach of continuing contract under Tenn. Code Ann. § 49–5–409.

charged; (2) the Trial Court erred in finding that the Waiver was a valid and enforceable agreement because the Superintendent did not have the authority to obtain such a waiver of tenure; and (3) because the Waiver is not enforceable, the reelection of Plaintiff for a fourth year of service, in effect, resulted in her attainment of tenure.

Defendants raise no additional issues on appeal. Defendants contend the Trial Court correctly dismissed Plaintiff's claim because the undisputed material facts show that Plaintiff had not attained tenure since the Superintendent had not given the requisite notice to the School Board pursuant to Tenn.Code Ann. § 49–5–504(b).

Our Supreme Court outlined the standard of review of a motion for summary judgment in *Staples v. CBL & Assoc.*, 15 S.W.3d 83 (Tenn.2000):

> The standards governing an appellate court's review of a motion for summary judgment are well settled. Since our inquiry involves purely a question of law, no presumption of correctness attaches to the lower court's judgment, and our task is confined to reviewing the record to determine whether the requirements of Tenn. R. Civ. P. 56 have been met. *See Hunter v. Brown*, 955 S.W.2d 49, 50–51 (Tenn.1997); *Cowden v. Sovran Bank/Central South*, 816 S.W.2d 741, 744 (Tenn.1991). Tennessee Rule of Civil Procedure 56.04 provides that summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, *see Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn.1993); and (2) the moving party is entitled to a judgment as a matter of law on the undisputed facts. *See Anderson v. Standard Register Co.*, 857 S.W.2d 555, 559 (Tenn.1993). The

moving party has the burden of proving that its motion satisfies these requirements. *See Downen v. Allstate Ins. Co.*, 811 S.W.2d 523, 524 (Tenn.1991). When the party seeking summary judgment makes a properly supported motion, the burden shifts to the nonmoving party to set forth specific facts establishing the existence of disputed, material facts which must be resolved by the trier of fact. *See Byrd v. Hall*, 847 S.W.2d at 215.

To properly support its motion, the moving party must either affirmatively negate an essential element of the nonmoving party's claim or conclusively establish an affirmative defense. *See McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn.1998); *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997). If the moving party fails to negate a claimed basis for the suit, the non-moving party's burden to produce evidence establishing the existence of a genuine issue for trial is not triggered and the motion for summary judgment must fail. *See McCarley v. West Quality Food Serv.*, 960 S.W.2d at 588; *Robinson v. Omer*, 952 S.W.2d at 426. If the moving party successfully negates a claimed basis for the action, the non-moving party may not simply rest upon the pleadings, but must offer proof to establish the existence of the essential elements of the claim.

The standards governing the assessment of evidence in the summary judgment context are also well established. Courts must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor. *See Robinson v. Omer*, 952 S.W.2d at 426; *Byrd v. Hall*, 847 S.W.2d at 210–11. Courts should grant a summary judgment only when both the facts and

the inferences to be drawn from the facts permit a reasonable person to reach only one conclusion. *See McCall v. Wilder,* 913 S.W.2d 150, 153 (Tenn. 1995); *Carvell v. Bottoms,* 900 S.W.2d 23, 26 (Tenn.1995).

*Staples,* 15 S.W.3d at 88–89; *see also Madison v. Love,* No. E2000–01692–COA–RM–CV, 2000 WL 1036362, at *2 (Tenn.Ct. App. July 28, 2000), *no appl. perm. app. filed,* (holding that "[m]aterial supporting a motion for summary judgment must do more than 'nip at the heels' of an essential element of a cause of action; it must negate that element"). A fact is "material" for summary judgment purposes, if it must be decided in order "to resolve the substantive claim or defense at which the motion is directed." *Luther v. Compton,* 5 S.W.3d 635, 639 (Tenn.1999) (citing *Byrd v. Hall,* 847 S.W.2d at 211).

 We must decide whether the Trial Court correctly granted Defendants judgment as a matter of law based upon its conclusion that Plaintiff had not attained tenure status. The Tennessee Teachers' Tenure Act is found at Tenn. Code Ann. § 49–5–501, *et seq.,* and provides the requirements that must be met before a teacher attains tenure status. The purpose of the Act " 'is to afford a measure of job security to those educators who have attained tenure status' " ... and to assure " 'efficient administration of the local educational systems of this state ... [through] stability of programs and trained personnel.' " *Fulks v. Watson,* No. M1999–02800–COA–R3–CV, 2001 WL 673573, at *3 (Tenn.Ct.App. June 18, 2001), *no appl. perm. app. filed,* (quoting *Ryan v. Anderson,* 481 S.W.2d 371, 374 (Tenn.1972)).

The term "tenure" is defined by Tenn. Code Ann. § 49–5–501(a)(11)(A), in pertinent part, as follows:

"Tenure" indicates the statutory requirements, conditions, relations and provisions in this part, under which a teacher employed by a board holds a position as a teacher under the jurisdiction of the board.[3]

School teachers may attain "limited tenure" or "permanent tenure" status, and these two types of tenure are distinguished by Tenn.Code Ann. §§ 49–5–501(a)(11)(B)-(C) and 49–5–503. Plaintiff was eligible to attain "permanent tenure." Tenn.Code Ann. § 49–5–503(2). The Tennessee Teachers' Tenure Act first defines "permanent tenure" in Tenn.Code Ann. § 49–5–501(a)(11)(C) as:

a term and condition of tenure, extending from the time when the teacher acquires the status of permanent tenure until such time as the teacher arrives at the maximum age set forth in this part, resigns, retires or is dismissed under provisions of this part....

The second definition of "permanent tenure" is found at Tenn.Code Ann. § 49–5–503(2), which provides four requirements for tenure as follows:

"Permanent tenure" applies to any teacher who:

(A) Has a degree from an approved four-year college or to any vocational teacher who has the equivalent amount of training established and licensed by the state board of education;

(B) Holds a valid professional license based on training covering the subjects or grades taught;

(C) Has completed a probationary period of three (3) school years or not less than twenty-seven (27) months within

---

3. Tenn.Code Ann. § 49–5–501(a)(2) defines the term "board," in pertinent part, as "the local board of education holding jurisdiction in its respective territory."

the last five-year period, the last year to be employed as a regular teacher; and

(D) Is reemployed by the board for service after the probationary period.

In addition, Tenn.Code Ann. § 49–5–504 addresses the teachers' probationary periods and attainment of tenure as follows:

(a) Any teacher, otherwise qualified for "permanent tenure" status ... shall serve three (3) years or not less than twenty-seven (27) months within a five-year period as a probationary teacher before acquiring "permanent tenure" status....

(b) Upon completion of the probationary period, *any teacher who is reemployed or retained in the system is entitled to the tenure status* for which such teacher is qualified by college training and licensing; *provided, that the superintendent shall notify the board prior to reelection by the board that the teacher, if reelected, will attain tenure status.*

(c) Time spent on leave of absence, except sick leave as provided in § 49–5–710, shall not be counted as a part of the probationary period.

(emphasis added).

■ In its Order, the Trial Court found *Bowden v. Memphis Bd. of Educ.,* 29 S.W.3d 462 (Tenn.2000), to be controlling authority. In *Bowden,* our Supreme Court addressed the requirements for teachers' tenure set forth in both Tenn.Code Ann. §§ 49–5–503 and 49–5–504(b). The *Bowden* Court examined the plain language of these two statutes in order to determine the legislative intent of the Tennessee Teachers' Tenure Act. *Id.* at 465. In affirming the trial court's grant of summary judgment to the Memphis Board of Education, the Court found that the plaintiff had not attained tenure merely by meeting the four requirements of Tenn.Code Ann. § 49–5–503(2)(A)-(D). *Id.* Instead, the Court held that a public school teacher's

"completion of the probationary period by itself does not automatically confer permanent tenure, but rather, is 'merely a condition precedent to *eligibility* for tenure.'" *Id.* (emphasis added) (quoting *Sanders v. Vinson,* 558 S.W.2d 838, 842 (Tenn.1977)). The "'conference of tenurial status is dependent not only upon service but also upon affirmative action by the Board of Education.'" *Id.* (quoting *Sanders v. Vinson,* 558 S.W.2d at 842). The Court concluded that Tenn.Code Ann. § 49–5–504(b) imposes a limitation on § 49–5–503(2) in that it requires the superintendent to give notice to the school board before a teacher may attain tenure. *Id.* at 465–66 (citing *Reeves v. Etowah City Sch. Bd. of Educ.,* 806 S.W.2d 176, 179 (Tenn.1991)). Because the superintendent had not recommended plaintiff for tenure to the school board, the *Bowden* Court held that plaintiff had not met all of the requirements for tenure. *Id.*

Plaintiff contends on appeal that the Trial Court erroneously applied *Bowden v. Memphis Bd. of Educ.,* 29 S.W.3d 462 (Tenn.2000), to this matter. Plaintiff argues that unlike the facts of this case, the *Bowden* decision addressed facts that occurred prior to the passage of the Education Improvement Act of 1992. *See id.* at 464 (stating that plaintiff's cause of action arose in April 1991). Plaintiff contends that under the Education Improvement Act of 1992, Tenn.Code Ann. § 49–2–301(f)(1)(J), provides that one of the duties of the superintendent is to "[r]ecommend to the board of education teachers who are eligible for tenure ...," and, in turn, the school board, has a statutory duty to "[e]lect, upon the recommendation of the superintendent, teachers who have attained or are eligible for tenure ..." under Tenn.Code Ann. § 49–2–203(a)(1). Plaintiff argues that under the EIA, a superintendent has authority to employ all non-

tenured teachers, while the school board retains the authority to hire teachers eligible for tenure. Plaintiff also contends that the effect of these statutes is that, once a teacher is eligible for tenure, the superintendent has no statutory authority to employ that teacher again, and if the superintendent wishes that teacher to be rehired, the superintendent must recommend that teacher for tenure to the school board. Plaintiff contends that in this case, the Superintendent's recommending Plaintiff for rehire for the 1997–98 school year effectively operated as notice to the School Board that Plaintiff was eligible for tenure.

We disagree with Plaintiff's argument and hold that the Trial Court correctly granted judgment as a matter of law to Defendants. First, we hold that the undisputed material facts contained in the record on appeal clearly show that, at most, Plaintiff completed her probationary period which is merely a condition precedent to her eligibility for tenure. *Bowden v. Memphis Bd. of Educ.*, 29 S.W.3d at 465. Accordingly, the proof also shows that the Superintendent did not give notice, at any time, to the School Board of Plaintiff's eligibility for tenure. As the teacher in *Bowden*, Plaintiff cannot establish that she met all of the requirements to attain tenure status due to the Superintendent's failure to give the requisite notice to the Board of Education. *See id.* at 465–66.

Moreover, we hold that *Bowden v. Memphis Bd. of Educ.* clearly applies to this matter despite the passage of the Education Improvement Act of 1992. This Court, in a recent opinion, held that *Bowden v. Memphis Bd. of Educ.* was applicable to a case where the relevant facts occurred *after* the passage of the Education Improvement Act of 1992. *Fulks v. Watson*, 2001 WL 673573, at * 3. In *Fulks*, this Court rejected the plaintiff's argument that, because he was re-hired in 1994 after he completed his three-year probationary

period, the school board had effectively granted him tenure. *Id.*, at * 4. This Court reiterated the rule provided by *Bowden v. Memphis Bd. of Educ.* as follows:

It is clear that, notwithstanding Mr. Fulks's argument to the contrary, Tennessee law requires *actual notice to and affirmative action by a board of education before tenure is conferred.* Nothing in the record before us shows that the superintendent notified the Board that Mr. Fulks would acquire tenure if he was rehired after the probationary period or that the Board took any affirmative action to grant Mr. Fulks tenure.

*Id.* (emphasis added).

As in *Bowden* and *Fulks*, the undisputed material facts contained in the record on appeal show that at the end of Plaintiff's probationary period, the Superintendent did not recommend Plaintiff for tenure as is required by Tenn.Code Ann. § 49–5–504(b). The reelection of Plaintiff for the 1997–98 school year after she completed her three-year probationary period is not sufficient for Plaintiff to attain tenure status. *See id.; Bowden v. Memphis Bd. of Educ.*, 29 S.W.3d at 465. Both our Supreme Court and this Court have interpreted Tenn.Code Ann. § 49–5–504(b) as a limitation on the four statutory requirements of tenure provided by Tenn.Code Ann. § 49–5–503(2) and have held that to hold otherwise would render Tenn.Code Ann. § 49–5–504(b) surplusage. *Bowden v. Memphis Bd. of Educ.*, 29 S.W.3d at 466; *Fulks v. Watson*, 2001 WL 673573, at * 5. Tenn.Code Ann. § 49–5–504(b) requires an affirmative act of the Superintendent, that is, the giving of notice to the School Board of Plaintiff's tenure eligibility. Defendants have negated this essential element of Plaintiff's claim. Therefore, we hold that the Trial Court correctly granted Defendants judgment as a matter

of law. *See* Tenn. R. Civ. P. 56.04; *Staples v. CBL & Assoc.*, 15 S.W.3d at 88–89.

Plaintiff's remaining issues on appeal concern the Superintendent's authority to obtain Plaintiff's agreement to waive her right to tenure and the enforceability of the Waiver. These remaining issues are pretermitted by our resolution of the issue concerning the Superintendent's not giving the requisite notice of Plaintiff's tenure eligibility to the School Board.

### Conclusion

The judgment of the Trial Court is affirmed and this cause is remanded to the Trial Court for such further proceedings as may be required, if any, consistent with this Opinion, and for collection of the costs below. The costs on appeal are assessed against the Appellant, Lynda C. Ray, and her surety.