TRAPP *v.* McCORMICK *et ux.*

(*Nashville*, December Term, 1938.)

Opinion filed July 1, 1939.

(1)

WORTH BRYANT, W. L. SWALLOWS, and WESLEY P. FLATT, all of Cookeville, for appellant.

ERNEST H. BOYD, of Cookeville, and H. B. McGINNESS, of Carthage, for appellees.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

This case involves the construction of a certain deed executed by the father of the complainant, L. A. Bohannon, on the 31st of August, 1932. It becomes necessary to consider the deed as a whole. The pertinent parts, omitting the description of the land, read as follows:

"For the consideration of the love and affection I have for my two daughters, Mary Jane Bohannon and Pearl Lee Bohannon McCormick and the further consideration

that my said daughter Pearl Lee McCormick pays to my grand daughter Aline Brown the sum of Twelve Hundred fifty dollars; said sum to be paid on or before 12 months after my death, but said sum is not to bear interest until the date of my death, at which time same shall draw interest, and to secure the payment of said sum a lien is hereby retained on the interest of the said Pearl Lee McCormick in and to the land herein described, I, L. A. Bohannon, have this day bargained and sold and do hereby transfer and convey unto the said Mary Jane Bohannon and Pearl Lee McCormick, their heirs and assigns, with the reservations herein named, the following tract or parcel of land in the fourth civil district of Putnam County, Tennessee, and described as follows: (Here follows description of land.)

"To have and to hold all the estate, title and interest in and to the above described tracts of land, with the reservations hereinafter set out, to Mary Jane Bohannon and Pearl Lee Bohannon McCormick, their heirs and assigns forever. I covenant with the said grantees that I am lawfully seized and possessed of said land, have a good right to convey it, and that it is unincumbered.

"I further agree and bind myself, heirs and legal representatives to warrant and forever defend the title of said land to the said Mary Jane Bohannon and Pearl Lee Bohannon McCormick with the reservations herein set out, their heirs and assigns against the lawful claims of all persons whomsoever.

"But I do hereby expressly reserve and retain the right to live on, use and control and retain to myself all the rents and profits of said land for the remainder of my life. It is also provided that none of the timber, except such as may be necessary for the upkeep of said land,

may be cut and sold from said land without the mutual consent of the parties hereto. And in the event my wife should survive me, she is to have the right to live on said premises and the parties hereto are to pay their equal share with my other children in her upkeep and support.

"It is further provided that in the event my daughter Mary Jane Bohannon, who is now unmarried, should die without issue, then and in that event her undivided interest in the above land shall pass to and be vested in J. L. Bohannon, L. D. Bohannon, Fannie A. Brown, Pearl Lee McCormick, Byrdie Mae Simpson, and my granddaughter, Aline Brown, share and share alike. This deed is made along with other deeds, in making a division of my property between my children and heirs, and no possession is to be given until my death.

"Witness my signature, this August 31, 1932.

"L. A. Bohannon."

The complainant is a daughter of L. A. Bohannon who was not named in the above-quoted deed, but who files her bill claiming an undivided interest in the land conveyed, as an heir of Mary Jane Bohannon, and she files this bill to assert this interest and prays for partition.

L. A. Bohannon died January 19, 1935. His daughter, Mary Jane Bohannon, referred to in the deed, had died intestate, before her father, on or about January 31, 1934. The wife of L. A. Bohannon died subsequent to the death of Mary Jane Bohannon and prior to the death of L. A. Bohannon. Mary Jane Bohannon was never married and died without issue.

The rights of the complainant rest on the insistence that the first or granting clause of this deed creates a fee in the first taker, Mary Jane Bohannon, and that re-

6

strictions and limitations otherwise and subsequently appearing in the deed are ineffective.

The learned Chancellor, in passing on the question, and holding against the contention of the complainant, said:

"The Court has carefully examined the deed and considered the contentions of the parties as set forth in oral argument on the hearing of the cause, and in the briefs filed, and is of the opinion that under a proper construction of the aforesaid deed, the complainant has no interest in the land sought to be partitioned, and that her bill cannot be maintained. The deed in question reserves to the complainant, L. A. Bohannon and his wife a life estate in said property, and vests the remainder in his daughters, Mary Jane Bohannon and Pearl Lee McCormick, and with reference to the remainder interest of Mary Jane Bohannon it is provided 'that in the event my daughter, Mary Jane Bohannon, who is now unmarried, should die without issue, then and in that event her undivided interest in the above land shall pass to and be vested in J. L. Bohannon, L. D. Bohannon, Fannie A. Brown, Pearl Lee Bohannon, Byrdie Mae Simpson and my granddaughter Aline Brown, share and share alike.'

"Considering the whole deed, the intent of the grantor is plain, there being no such repugnancy between the clauses so that the technical or subordinate rules of construction need be resorted to. The estate of Mary Jane Bohannon was a vested remainder, subject to the contingency of dying without issue, with a limitation over as to her share. She died prior to the death of the grantor and without issue, therefore the limitation over took effect."

We find no error in this holding of the Chancellor. He properly considered the deed as a whole, and doing so, correctly construed it. The intent seems to be plain. The "primary rule is that the intention of the parties as drawn from the whole instrument shall govern." It is only where the intention is uncertain that resort may be had to subordinate rules of construction. "It is a subordinate rule of construction that where an estate in fee is conveyed by the granting clause of a deed, and the *habendum* contains irreconcilable provisions, the repugnant clause of the *habendum* will be rejected." *Hicks* v. *Sprankle*, 149 Tenn., 310, at page 314, 257 S. W., 1044, at page 1045, citing 18 C. J., 330, 331; *Teague* v. *Sowder*, 121 Tenn., 132, 114 S. W., 484. And, as said in *Beecher* v. *Hicks*, 75 Tenn. (7 Lea), 207, 212. "In modern times, the inclination of the courts is to look to the whole of the instrument, without reference to formal divisions in order to ascertain the intention of the parties, and not to allow technical rules to override the intent."

The subordinate rule of construction relied on for appellant that an estate granted in fee by a first clause will not be cut down by a subsequent limitation gives way to the primary rule of intent, when the intent appears clearly from the deed as a whole.

It will be observed that the granting clause in the deed before us contains an express notice that it is not intended to be absolute, expressed by the words "with the reservations herein named." And, again, in the *habendum* clause a like expression is incorporated, "with the reservations hereinafter set out." As we understand learned counsel for appellant takes a distinction between the word "reservations" used in this deed and the word "exceptions," insisting that the limitations

contained in the deed are exceptions, rather than reservations. Conceding the technical accuracy of this insistence, that is, that there is a technical distinction between the two phrases, we think this Court has recognized that there is no practical difference in modern conception. Discussing this distinction found in the books between an exception and a reservation, this Court, in *Coal Creek Mining Co.* v. *Heck*, 83 Tenn. (15 Lea), 497, 505, said: "We take it, under our system of conveyancing, treating all instruments as mere contracts, in which the intention of the parties is to be arrived at from the language used by them, in connection with the surrounding circumstances, the result would be the same in either case, and the distinction stated be of no practical importance."

In 18 Corpus Juris, at pages 341, 342, it is said that, "while this distinction between a reservation and an exception has been uniformly recognized, the terms 'reservation' and 'exception' are often used interchangeably, and the technical meaning will give way to the manifest intent, even though the technical term to the contrary is used." Our case of *Coal Creek Mining Co.* v. *Heck, supra,* is one among a great many cited to sustain this text.

Giving application to this rule, there can be no possible question about the proper construction of this instrument, and effect must be given to the limitations so plainly set forth therein, with the result that the complainant has acquired no interest in the land conveyed.

*Teague* v. *Sowder, supra,* is relied on by appellant for the rule that the use of the word "assigns" in the granting clause imports an intention to create a fee simple estate, with power of disposition. But this opinion strongly emphasizes that technical rules of construction must give way to the intention when it can be

arrived at from the instrument as a whole. And, while it was held that the clear provisions of the granting clause creating a fee simple estate in that case must prevail, it was stressed that the words relied on in the subsequent clause to cut down this fee were ambiguous. In other words, the uncertainty in the *Teague Case* was in the very language relied on to set up the limitation to a life estate. It is, of course, well settled that if the language of the granting clause clearly conveys a fee simple estate, and the subsequent language relied on as a limitation is not clear and unmistakable, then the doubt is resolved against the limitation. *Meacham* v. *Graham*, 98 Tenn., 190, 205, 39 S. W., 12, approved in *Teague* v. *Sowder, supra.*

Counsel raise the procedural question that the Chancellor heard this case at his regular term, in December, and took the cause under advisement and did not dispose of it until February 11th, following, at which time his order was made instructing the Clerk and Master to enter his decree on the Chamber Minutes of the Court. It is insisted that the decree is void, since it was not entered within the thirty day period fixed by the statute, Code, Section 10501, which authorizes Chancellors to hold under advisement cases tried in any term and enter decrees therein subsequently.

 It is true that this statute does contain a limitation of the time to thirty days within which such a decree may be entered, without the consent of counsel, and appellees reply that this statute should be treated as directory only. We do not find this statute to have been construed by this Court in any reported opinion. It may well be doubted, in the first place, that it is within the power of the Legislature to thus control the action of the Court, it being in the nature of an encroachment upon the

judicial prerogatives. In the second place, the general rule undoubtedly is that those statutory provisions which relate to the mode, or time of doing the act to which the statute applies, are not held to be mandatory, but directory only. In *Huffines* v. *Gold*, 154 Tenn., 583, at page 588, 288 S. W., 353, at page 354, the opinion cites *Richardson* v. *Young*, 122 Tenn., 471, 527, 530, 125 S. W., 664, and quotes the following statement of the applicable rule, in turn quoted from *Covington's Case, State ex rel. Atty. General* v. *Covington*, 29 Ohio St., 102, 117: "The difference between a mandatory and a directory provision is often determined on grounds of expediency; the reason of this being that less injury results to the general public by disregarding than by enforcing the letter of the law." And, also, quotes from Lewis' Sutherland, Statutory Construction, section 610, as follows: "The consequential distinction between directory and mandatory statutes is that the violation of the former is attended with no consequences, while the failure to comply with the requirements of the other is productive of serious results. This distinction grows out of a fundamental difference in the nature, importance, and relation to the legislative purpose of the statutes so classified. The statutory provisions which may thus be departed from with impunity, without affecting the validity of statutory proceedings, are usually those which relate to the mode or time of doing that which is essential to effect the aim and purpose of the Legislature or some incident of the essential act."

We are of the opinion that, consistently with these rules, the provisions of the statute before us may properly be held to be directory only.

Affirmed.