IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 15, 2002 Session

# SOUTHWEST WILLIAMSON COUNTY COMMUNITY ASSOCIATION, ET AL. v. J. BRUCE SALTSMAN, SR.,

### Appeal from the Chancery Court for Davidson County
### No. 99-2368-I  Irvin H. Kilcrease, Jr., Chancellor

—————————

### No. M2001-00654-COA-R3-CV - Filed May 16, 2002

—————————

A group of Williamson County residents whose property was threatened by highway construction filed a Petition for a Declaratory Order against the Tennessee Department of Transportation. They argued that the Department violated the statute that authorized the project by not complying with the environmental standards for construction of an interstate highway. The Administrative Law Judge denied the petition, and the trial court affirmed the ALJ. We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed and Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN, J. and JEFFREY F. STEWART, SP. J., joined.

David E. Lemke, Nashville, Tennessee, for the appellants, Southwest Williamson County Community Association, William B. Caldwell, and Micaro Properties.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; Michael W. Catalano, Associate Solicitor General, for the appellee, J. Bruce Saltsman, Sr., Commissioner, Tennessee Department of Transportation.

### OPINION

### I. A CONTROVERSIAL HIGHWAY

The chain of events that led to this dispute arose from the 1986 Tax Act, which among other things, raised the tax on all gasoline sold, stored or distributed in Tennessee, in order to fund a number of transportation projects. A part of the Act, Tenn. Code. Ann. § 67-3-2003, listed specific highway projects that were to benefit from the gasoline tax increases, and included the following:

The projects listed in the memorandum dated April 1, 1986 from Commissioner Dale Kelley to Senator Henry, Senator Darnell, Representative Bragg and Representative Robinson shall constitute and comprise the projects to be completed no later than the end of the 1998-1999 fiscal year, and the provisions of such memorandum are hereby incorporated by reference. No project shall be deleted or changed from such memorandum without the approval of the speaker of the house of representatives and the speaker of the senate.

Tenn. Code. Ann. § 67-3-2003(b)(1)(A).

The memorandum in question was in the form of a letter to the four legislative Chairmen, stating that the increase in the gas tax would "fund a program containing six interstate-type parkways and fifteen priority projects." An addendum to the letter listed six different roads, including one referred to as both Interstate 840 and I-840, with a length of 77 miles and an estimated cost of $351,000,000, and described as follows: "Middle Tennessee Parkway from I-40 West of Nashville, Extending South of Nashville to I-40 East of Nashville (Construct 4-Lane Divided Highway)."

The label attached to the road is central to the current dispute. The petitioners insist that by calling it I-840, both the legislature and the transportation commissioner bound themselves to construct it as an interstate highway, while the Department argues that it was entitled to designate the road as a state highway if it so chose. At some point, the Department began to refer to the uncompleted highway as State Route 840. These designations have more than a semantic significance, for the federal government imposes environmental requirements on the construction of interstate highways, which do not apply to state highways. In this opinion, we will refer to the disputed highway as Route 840.

The Tennessee Department of Transportation (TDOT) began work on Route 840 soon after enactment of the 1986 Tax Act, including planning, design, right-of-way acquisition, financing, and construction for the four-lane access controlled highway. In November of 1991, the Commissioner submitted an application to the United States Secretary of Transportation to designate Route 840 as an interstate highway, but he subsequently withdrew the application.

## II. A CHALLENGE TO THE DEPARTMENT OF TRANSPORTATION

The plans for Route 840 called for the road to cross the counties of Dickson, Hickman, Williamson, Rutherford and Wilson, with almost half of its length located within the borders of Williamson County. A group of landowners in Southwest Williamson County were alarmed by the impact that work on the highway was having on their property and on their communities, and in 1997 they formed a non-profit association to deal with the environmental questions raised by Route 840, and with other issues of importance to their communities. The pleadings in this case recite that the

members of the Southwest Williamson County Community Association are individuals who reside and/or own property in the communities of Bending Chestnut, Bingham, Boston, Burwood, Craigfield, Fernvale, Greenbriar, Hillboro/Leiper's Fork, Kingfield, Peach Hollow, Southhall, and West Harpeth.

On June 8, 1998, the Association, individual landowner William B. Caldwell, and a Tennessee partnership managed by Mr. Caldwell filed a Petition for Declaratory Order with the Department of Transportation. The petitioners asked for (1) a declaration that TDOT's construction of the disputed highway was in violation of Tenn. Code. Ann. § 67-3-2003(b)(1)(A), and (2) an order halting construction on the road until the Department could demonstrate that it had complied with all federal statutes and regulations applicable to interstate highways.

On March 23, 1999, the TDOT Commissioner entered an order directing Administrative Law Judge (ALJ) James A. Hornsby to hear the matter. The hearing was conducted on May 7, 1999, and involved a technical record of fifteen volumes and over 2,000 pages. The ALJ issued an Initial Order denying the petition on June 11, 1999. The order became final on June 21, 1999. The petitioners filed a Petition for Judicial Review in the Chancery Court of Davidson County on August 20, 1999, pursuant to Tenn. Code. Ann. § 4-5-225. The court affirmed the final order of the ALJ on February 1, 2001. This appeal followed.

### III. RULES OF STATUTORY CONSTRUCTION

The primary argument on appeal is the same one that was presented to, and rejected, by the ALJ and the chancery court: that by building Route 840 as a state highway rather than as an interstate, the Department of Transportation was acting in violation of the statute that authorized its construction. We note that although the road in question is referred to in the Commissioner's memorandum as I-840 and Interstate 840, in the same document it is also referred to as one of six "interstate-type parkways." The statute itself (as opposed to the memorandum incorporated by reference into it) did not otherwise make reference to the interstate highway system.

The most fundamental rule of statutory construction is to ascertain and give effect to the intention or purpose of the legislature as expressed in the statute. *Memphis Pub. Co. v. Tennessee Petroleum Underground Storage Tank Bd.*, 975 S.W.2d 303 (Tenn. 1998); *Westinghouse Electric Corp. v. King*, 678 S.W.2d 19 (Tenn. 1984). The appellants quote from *Steele v. Industrial Development Board*, 950 S.W.2d 345 (Tenn. 1997), to argue that the inclusion of the words "I-840" and "Interstate 840" in the memorandum, and the adoption of the memorandum by the General Assembly demonstrates a legislative intention to build the road in accordance with all of the rules and regulations applicable to interstate highways:

> "legislative intent is to be ascertained from the ordinary and natural meaning of the language used in the statute, without any forced or subtle construction that would extend or limit its meaning. The statute must be construed in its entirety, and it

should be assumed that the legislature used each word purposely and that those words convey some intent and have a meaning and a purpose."

950 S.W.2d at 348.

Appellee quotes the language from *Steele* that immediately follows the above, and argues that a broader reading of the statute than is advocated by the appellants is necessary in order to ascertain the true intentions of the legislature:

> "The background, purpose, and general circumstances under which words are used in a statute must be considered, and it is improper to take a word or a few words from its context and, with them isolated, attempt to determine their meaning."

*Ibid.*

Appellee notes that the caption and body of the 1986 Tax Act indicates a purpose only to amend the Tax Code, in order to increase state revenues for highways. He argues that the appellant has seized upon the words "Interstate 840" in isolation to reach a conclusion that is unsupported by any other language in the statute: namely that the legislature intended to bind the Department of Transportation to seek federal funding, to plan, and to construct Route 840 as a federal aid highway, thereby subjecting the entire project to all the federal statutes, regulations and approvals that apply to such projects.

Both parties urge us to look at some related statutes, in accordance with another rule of statutory construction, that statutes relating to the same subject matter and forming a single scheme should be construed together to promote consistency and uniformity. *State ex rel. Witcher v. Bilbrey,* 878 S.W.2d 567 (Tenn. Ct. App. 1994); *Westinghouse Electric v. King*, 678 S.W.2d 19 (Tenn. 1984).

Appellants direct our attention to some subsequent enactments, including Acts 1997, ch. 316, § 1, which added another subsection to Tenn. Code. Ann. § 67-3-2003, and which states in pertinent part, "[t]he commissioner of transportation may consider a northern route to complement the Bicentennial Parkway project known as Interstate 840." Tenn. Code. Ann. § 67-3-2003(e). Appellants also point out that both before and after the Commissioner withdrew the application to have the road designated as an interstate highway, numerous planning documents, press releases, and other documents emanating from the Department of Transportation, have referred to the disputed road as I-840.

Appellee directs us to Tenn. Code. Ann. § 54-1-105, which describes the rather extensive authority of the Commissioner of Transportation over the "construction, repair, and maintenance of all roads . . . ." He argues that the Commissioner's authority includes the power to seek whatever designation of Route 840 that in his judgment best serves the needs of the people of Tennessee, and that there is nothing in the 1986 Tax Act expressly stating or necessarily implying an intent to modify or limit his authority.

Appellee also argues that we must give deference to the interpretation of statute followed by the administrative agency charged with its enforcement or execution. *Consumer Advocate Division v. Greer*, 967 S.W.2d 759 (Tenn. 1998); *Riggs v. Burson*, 941 S.W.2d 44 (Tenn. 1997). This well-established rule perhaps carries additional weight here, because the letter and memorandum from which this case arose was drafted not by the legislature, but by the Commissioner of the agency with the primary responsibility for roads in this state.

Both parties have ably presented arguments in support of their respective positions, and if we considered Tenn. Code. Ann. § 67-3-2003 in isolation, this case might present a closer question. It appears to us, however, that to correctly interpret the Tennessee statute, we must also consider the effect of the federal statute that sets out the process for making additions to the interstate highway system.

## IV. THE INTERSTATE HIGHWAY SYSTEM

As the Commissioner points out, neither he nor the legislature of this state nor its courts have the power to designate a road as part of the interstate highway system. That power is vested solely in the United States Secretary of Transportation, who may grant such a designation upon the application of the state. *See* 23 U.S.C. § 103(c).

The federal statute provides two ways whereby a road becomes a part of the interstate system. If a road has not yet been built or not yet built to interstate standards, and the Secretary determines that such a route would provide "a logical addition or connection to the Interstate System," then upon the recommendation of the state in which the highway is located, the Secretary may designate it as a route on the system. The Secretary's designation is conditional upon the state entering into a written agreement to meet all the interstate standards, apparently including compliance with all applicable federal rules, including the preparation of environmental impact statements prior to beginning construction. 23 U.S.C. §103(c)(4)(B).

A highway may also be added to the federal interstate system after it has been completed. 23 U.S.C. 103(c)(4)(A). As in Subsection (B), supra, the Secretary must first determine that the highway would be a logical addition or connection to the interstate highway system, and the state must recommend its inclusion. The completed highway must also meet all the standards of construction required for interstate highways, but it seems unlikely that this would include a backward look to determine if the proper environmental studies were done prior to construction.

The appellants are not arguing that the Department must eventually apply for interstate status. They argue rather, that because of the use of the words "I-840" and "Interstate 840" in the commissioner's memorandum, the only acceptable interpretation of Tenn. Code. Ann. § 67-3-2003 is that the State was required to seek designation of the road as an interstate prior to beginning construction, and/or to comply with all the environmental regulations that accompany that process.

We cannot fault the petitioners for seeking to protect their land and their communities. It appears to us, however, that their reading of Tenn. Code. Ann. § 67-3-2003 would impermissibly stretch and distort the limits of statutory interpretation. Even if we agreed that Tenn. Code. Ann. § 67-3-2003 requires the Department to seek interstate status for Route 840, we cannot find anything in the statute to indicate that it is required to seek such status under Subsection (B) of 23 U.S.C. § 103(c)(4), rather than under Subsection (A). We therefore must reject the petitioners' argument.

## V. OTHER ISSUES
### a. THE TIME FOR COMPLETION OF ROUTE 840

The second issue raised by the Association involves the Department's failure to complete Route 840 before the end of the 1998-1999 fiscal year, as Tenn. Code. Ann. § 67-3-2003(b)(1)(A) states that it is to do. The appellants argue that the 1998-1999 fiscal year-end is a mandatory deadline for completion of this (and other) projects, and that it therefore must abandon all such projects unless and until the General Assembly decides to extend the time for TDOT to complete them. The trial court held, however, that the schedule in the statute was not mandatory, but directory only. The trial court's holding is consistent with the general rule that "statutory provisions relating to the mode or time of doing an act to which the statute applies are ordinarily held to be directory rather than mandatory." *See Trapp v. McCormick*, 130 S.W.2d 122 (Tenn. 1939); *Presley v. Bennett*, 860 S.W.2d 857 (Tenn. 1993).

The appellee points out that the 1986 Tax Act states that the new gasoline tax was intended, among other things, to generate funding for new construction on the primary system of state highways over the period from 1986 to 1999, Tenn. Code. Ann. § 67-3-2001(f)(1)(C), and that the projected completion dates were designed to match this goal. The appellee argues that the Department's ability to meet this schedule depends on sufficient tax revenues being generated each year, and sufficient funds being appropriated each year by the General Assembly so these and other projects can be completed on time. The appellee argues, in short, that the Department's ability to meet the schedule set out by the General Assembly is at least partly beyond its control, and partly within the control of the General Assembly itself. He has not argued, however, that the delay in the completion of the road was actually due to inadequacy of funding.

It is of greater importance for the appellee's argument that there is nothing in the 1986 Tax Act or in any subsequent enactment by the legislature that would repeal its authorization of Route 840, or to establish any other penalty or legal consequence if TDOT does not finish the project on schedule. Given the legislature's silence on a matter that would be indispensable if it intended to compel the Department to meet the schedule it set out, we must conclude that the trial court was correct in holding that the 1999 completion date should be considered to be directory rather than mandatory.

**b. AUTHORIZATION BY THE LEGISLATIVE SPEAKERS**

Appellants' final argument is that the Commissioner violated the terms of Tenn. Code. Ann. § 67-3-2003(b)(1)(A) by not obtaining the approval of the Speaker of the House of Representatives and the Speaker of the Senate before changing Route 840 from an interstate highway to a state highway. While a change in the path of the road or in its configuration as a four-lane highway might require the assent of the two speakers, we have already held that the legislature did not intend to bind the Department of Transportation to build Route 840 as an interstate highway. The Commissioner was therefore not required to get permission before designating Route 840 as a state highway.

## VI.

The order of the trial court is affirmed. Remand this cause to the Chancery Court of Davidson County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellants, Southwest Williamson County Community Association, William B. Caldwell and Micaro Properties.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.