IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
October 7, 2009 Session

# HOME BUILDERS ASSOCIATION OF MIDDLE TENNESSEE, ET AL. v. WILLIAMSON COUNTY, ET AL.

**Appeal by Permission from the Court of Appeals, Middle Section
Chancery Court for Williamson County
No. 31384   Jeffrey S. Bivins, Chancellor**

_____

**No.  M2008-00835-SC-R11-CV - Filed February 25, 2010**

_____

This appeal involves a question of law concerning the interpretation of the Williamson County Adequate Facilities Tax Act, which imposes a privilege tax based upon the gross square footage of new construction in Williamson County.  In 2005, the County notified certain builders of new residential construction that a review for the period from January 1, 1998, through December 31, 2003, indicated that the builders owed an additional amount of privilege tax because the actual square footage of the completed construction was greater than the projected square footage at the time the privilege tax was paid.  The builders objected to payment of the additional privilege tax and filed an action for declaratory judgment, contending that the County's belated collection attempts were in derogation of the Act.  The trial court granted summary judgment in favor of the County, and the Court of Appeals affirmed.  We accepted this case for review to determine whether, after the privilege tax is paid based upon the projected square footage of new development before construction, the County is authorized to collect an additional privilege tax after construction based upon the actual completed square footage.  We hold that after the County collects the privilege tax based upon the projected square footage, the language of the Act prohibits the County from later collecting additional privilege taxes based upon the actual square footage of the completed project.  Accordingly, we reverse the judgment of the Court of Appeals, vacate the trial court's grant of summary judgment in favor of the County, grant summary judgment in favor of the builders, and remand to the trial court for further proceedings as necessary.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals
Reversed; Cause Remanded**

SHARON G. LEE, J., delivered the opinion of the court, in which JANICE M. HOLDER, C.J.,

CORNELIA A. CLARK, and WILLIAM C. KOCH, JR., JJ., joined. GARY R. WADE, J., filed a separate dissenting opinion.

John P. Williams and Thomas V. White, Nashville, Tennessee, for the appellant, Home Builders Association of Middle Tennessee.

Jeffrey Dean Moseley and Elisabeth M. Carson, Franklin, Tennessee, for the appellees, Williamson County and its Board of Adjustments and Appeals.

**OPINION**

**I. Factual and Procedural Background**

Anticipating continued rapid economic growth and the significant demand for new facilities due to the location of a General Motors Saturn plant in Williamson County ("the County") and a continued expansion of the Nashville metropolitan area, the County sought to impose a privilege tax on new development in order to offset its cost of providing capital facilities made necessary by such development. Responding to the request in 1987, the General Assembly enacted, and the County ratified, the Williamson County Adequate Facilities Act, ch. 118, 1987 Tenn. Priv. Acts 238 (the "Act"). The Act authorized the County to impose a privilege tax on all new construction within its boundaries.

The intent and purpose of the Act, as provided in section 3 of the Act, was to authorize the County to impose a tax on new development,

> payable at the time of issuance of a building permit or certificate of occupancy so as to ensure and require that the persons responsible for new development share in the burdens of growth by paying their fair share for the cost of new and expanded public facilities made necessary by such development.

As originally enacted, section 8 of the Act provided that

> [t]he tax established in this act shall be collected at the time of application for a building permit for development . . . or, if a building permit is not required, at the time of application for a certificate of occupancy by the county or city official duly authorized in such jurisdiction to issue building permits or

2

certificates of occupancy.

Section 8 was later amended in 1989 to delete the reference to the certificate of occupancy and at the time of trial, provided that "[t]he tax established in this act shall be collected at the time of application for a building permit for development." Act of March 13, 1989, ch. 22, § 3, 1989 Tenn. Priv. Acts 59, 60.

After the Act's passage, the County began collecting the privilege tax. The amount of privilege tax collected was based upon the gross square footage of residential and non-residential development.[1] The privilege tax was collected differently based upon whether construction was in an unincorporated or incorporated area of the county. For new development in the unincorporated areas of the county, the builder was required to submit two sets of plans to the County's building department, along with an application for the building permit. The application for the building permit required the builder to state the square footage of each part of the planned residence. The application and plans were then reviewed by a six-person committee, representing the County's planning department, septic department, building codes department, zoning department, engineering department, and highway department. Upon the committee's approval of the submitted documents, the County issued the builder a building permit, and at that time, the privilege tax was paid, based upon the square footage of the residence as set forth in the building permit application. If the residence was to be built in one of the municipalities in the county, the builder was required to submit one set of plans and a privilege tax form, and the tax was paid at the time these documents were submitted based upon the square footage the builder had provided on the privilege tax form. Consequently, in all areas of the county, the privilege tax was calculated based upon the projected square footage of the new construction.

In 2004, the County reviewed the privilege tax payments remitted from January 1, 1998, through December 31, 2003. The review indicated that in some cases, the actual square footage of the completed residential construction was greater then the projected square footage stated in the building permit application or privilege tax form, and accordingly, the County deemed that an additional amount of privilege tax was owed.[2] In March of 2005, the County notified various homebuilders who had paid the privilege tax between 1998 and 2003 that it would be seeking recovery of additional amounts of privilege tax representing the

---

[1] Section 7 of the Act provided that the privilege tax was not to exceed $1.00 per gross square foot of new residential development and $2.00 per gross square foot of new non-residential development.

[2] Williamson County allowed a ten percent variance between the projected square footage of a residence and its actual constructed square footage and did not attempt to collect additional funds if the variance did not exceed that percentage.

discrepancy between the projected square footage and the actual square footage.

On March 22, 2005, Home Builders Association of Middle Tennessee, an organization of home developers in the business of constructing residential housing in Williamson County, and two of its members, McLeod Custom Builders LLC and Turnberry Homes LLC,[3] filed a declaratory judgment action in the Chancery Court for Williamson County against the County's mayor and budget director. By subsequent amendment, the mayor and budget director were dismissed as defendants, and the County and its Board of Adjustments and Appeals were added as defendants. The complaint contended that the County's pending attempts to collect additional funds based upon the square footage discrepancy were in derogation of the legislature's intent that the tax be collected at the time the homebuilder obtains a building permit and not thereafter. The complaint requested that the trial court construe the Act and determine the legality of the County's actions in this regard.

The trial court granted summary judgment in favor of the County, stating that the Act "does not limit the County's authority to review the initial assessment and to make a determination as to what the actual square footage of the home is" and that "the lack of a provision allowing this type of review at a later time does not necessarily mean that the County is prohibited from doing so." The Court of Appeals affirmed the judgment of the trial court.

The issue presented for our review is whether the Court of Appeals erred in affirming the trial court's ruling that the Act permits the County to collect additional privilege taxes after the issuance of the building permit based upon the discrepancy between the projected square footage of a residence and the later-determined actual square footage of the constructed residence. We hold that after the County collects the privilege tax based upon the projected square footage, the language of the Act prohibits the County from later collecting additional privilege taxes based upon the actual square footage of the completed project. Accordingly, we reverse the judgment of the Court of Appeals, vacate the judgment of the trial court, and remand to the trial court for further proceedings as necessary.

## II. Analysis

We are called upon to interpret the Williamson County Adequate Facilities Tax Act. The interpretation of this Act is a question of law and as such, is reviewed de novo with no presumption of correctness. Chattanooga-Hamilton County Hosp. Auth. v. Bradley County, 249 S.W.3d 361, 365 (Tenn. 2008). Since our interpretation involves a matter of law and there are no genuine issues of material fact, this is an appropriate case for summary judgment.

---

[3] These plaintiffs are not parties to this appeal.

Tenn. R. Civ. P. 56.04; Hannan v. Alltel Publ'g Co., 270 S.W.3d 1, 5 (Tenn. 2008); Byrd v. Hall, 847 S.W.2d 208, 214 (Tenn. 1993). The relevant facts of this case are not in dispute, and the sole question we address is whether the County was entitled to summary judgment as a matter of law. We review a trial court's grant of summary judgment de novo with no presumption of correctness. Martin v. Norfolk S. Ry. Co., 271 S.W.3d 76, 84 (Tenn. 2008); Blair v. W. Town Mall, 130 S.W.3d 761,763 (Tenn. 2004).

The primary rule governing our construction of any statute is to ascertain and give effect to the legislature's intent. Walker v. Sunrise Pontiac-GMC Truck, Inc., 249 S.W.3d 301, 309 (Tenn. 2008). To that end, we begin by examining the language of the statute. Curtis v. G.E. Capital Modular Space, 155 S.W.3d 877, 881 (Tenn. 2005). In our examination of statutory language, we must presume that the legislature intended that each word be given full effect. Lanier v. Rains, 229 S.W.3d 656, 661 (Tenn. 2007). When the import of a statute is unambiguous, we discern legislative intent "from the natural and ordinary meaning of the statutory language within the context of the entire statute without any forced or subtle construction that would extend or limit the statute's meaning." State v. Flemming, 19 S.W.3d 195, 197 (Tenn. 2000); see also In re Adoption of A.M.H., 215 S.W.3d 793, 808 (Tenn. 2007) ("Where the statutory language is not ambiguous . . . the plain and ordinary meaning of the statute must be given effect."). However, when, as in the present case, the language of a statute is ambiguous in that it is subject to varied interpretations producing contrary results, Walker, 249 S.W.3d at 309, we construe the statute's meaning by examining "the broader statutory scheme, the history of the legislation, or other sources." State v. Sherman, 266 S.W.3d 395, 401 (Tenn. 2008). Our research reveals that the original Act and its subsequent amendments were approved by the legislature without discussion, nor does there exist any other historical evidence specific to the enactment from which we might discern intent. Thus, our construction of the Act must be derived from the broader statutory scheme and other sources.

In addition to the above noted rules of construction applicable to statutes in general, we note the long-standing rule which provides that "[s]tatutes of taxation are to be strictly construed against the taxing authority and, therefore, liberally construed in favor of the taxpayer. . . . Where there is doubt as to the meaning of a taxing statute, the doubt must be resolved in favor of the taxpayer." Memphis Peabody Corp. v. MacFarland, 365 S.W.2d 40, 42-43 (Tenn. 1963) (citing Commercial Standard Ins. Co. v. Hixson, 133 S.W.2d 493 (Tenn. 1939)); see also Covington Pike Toyota, Inc. v. Cardwell, 829 S.W.2d 132, 135 (Tenn. 1992) ("Taxation statutes must be liberally construed in favor of the taxpayer and strictly construed against the taxing authority").

The County argues that under section 3 of the Act, it was authorized to collect the tax at either the time of issuance of the building permit or at the time of issuance of the certificate

of occupancy. The County relies on that language in section 3 which provides that the intent and purpose of the Act is to impose a tax "payable at the time of issuance of a building permit or certificate of occupancy." The County indicates an apparent inconsistency between this language and language at section 8 of the Act which, in its current form, provides that "[t]he tax established in this act shall be collected at the time of application for a building permit." As we have noted, when it was originally enacted, the Act provided at section 8 that the tax "shall be collected at the time of application for a building permit for development . . . or, if a building permit is not required, at the time of application for a certificate of occupancy." However, as we have also noted, when the Act was amended in March of 1989, the phrase "or, if a building permit is not required, at the time of application for a certificate of occupancy" was deleted. The County maintains that the logical explanation for the deletion of the latter phrase is that a building permit is always required and therefore, the phrase was deleted because it was superfluous. We do not agree. While this explanation might be acceptable had the legislature only deleted the words "or, if a building permit is not required," it does not account for the deletion of the language "at the time of application for a certificate of occupancy." The deletion of the additional language pertaining to the certificate of occupancy supports the conclusion that the legislature intended to restrict the time for collection of the tax to the time of the application for the building permit.

The County also argues that its interpretation of section 3 and its explanation for the amendment of section 8 are consistent with section 11[4] of the Private Act, which provides as follows:

> The provisions of this Act shall in no manner repeal, modify, or interfere with the authority granted by any other public or private law applicable to Williamson County. This Act shall be deemed to create an additional and alternative method for Williamson County to impose and collect taxes for the purpose of providing public facilities made necessary by new development in the county.

Referencing section 11, the County asserts that "the General Assembly did not limit the power of the County to collect privilege taxes by any means authorized by statute." While we do not necessarily disagree with this analysis of section 11, we do not conclude that it supports the County's argument that the Act allows collection of the tax after the time of application for a building permit. Section 11 merely provides that the Act shall not serve as an obstacle to the implementation of, or curtail powers granted under, other existing

---

[4] The County erroneously refers to this section of the Act as section 12 in its brief submitted to this Court.

6

legislation. It does not extend or broaden any authority otherwise granted the County under the Act nor does it grant the County any specific additional authority in regard to collection of the tax or any other matter.

In any event, the question before us under the facts of this case is not whether the County has the authority to collect the tax both at the time of application for a building permit and at the time of application for a certificate of occupancy, but whether the County may collect the tax at a time subsequent to both of these events. While it is unclear from the record exactly when the developers applied for the certificate of occupancy in this case, the record shows that it is the practice of the County to issue the certificate of occupancy upon completion of construction after final inspection of the residence and after all other requisite inspections have been made in accordance with the building permit. As we have indicated, it was the County's practice to collect the tax before construction of the residence began, either upon issuance of a building permit if the residence was to be built in an unincorporated area or upon the pre-construction filing of a privilege tax form if the residence was to be built in a municipality. There is no proof that the County's attempts to collect additional privilege tax amounts on the residences in this case based upon the alleged square footage discrepancy were initiated at the time the certificate of occupancy was applied for or issued with respect to any of these residences. Thus, the issue before us is not whether the County was authorized to collect the tax when the home builder applied for the certificate of occupancy or when it was issued but rather, whether the County is authorized to collect the tax at some time (in this case, months or years) *after* the certificate of occupancy was issued. We find nothing in the Act that authorizes the County to do so.

The only section of the Act that specifies the time at which the tax is to be collected is section 8, which provides that the tax "shall be collected at the time of application for a building permit." While section 3 expresses the intent that the tax be "*payable* at the time of issuance of a building permit or certificate of occupancy" (emphasis added), the language of section 3 is necessarily directed toward the taxpayer, not the County, because the tax is not payable by the County but only by the taxpayer. Section 3 does not directly impose any specific duty upon the County and designates no time for collection.

Unlike section 3, section 8 of the Act is addressed to the County as tax collector. We further believe that the legislature's use of the word "shall" at section 8 manifests an intent that the collection of the tax at the time of application for the building permit imposes a mandatory duty upon the County as to the time of collection. As a general matter, when the word "shall" is used in a statute it is construed to be mandatory, not discretionary. Gray v. Cullom Mach., Tool & Die, Inc., 152 S.W.3d 439, 446 (Tenn. 2004); Stubbs v. State, 393 S.W.2d 150, 154 (Tenn. 1965); Sanford Realty Co. v. City of Knoxville, 110 S.W.2d 325, 327 (Tenn. 1937). Notwithstanding this general rule, a statutory provision that pertains to

7

the time for performing an act governed by the statute is usually construed to be directory only. See Presley v. Bennett, 860 S.W.2d 857, 860 (Tenn. 1993); Trapp v. McCormick, 130 S.W.2d 122, 125 (Tenn. 1939). In accord, statutory directions to a taxing authority are construed to be directory upon the premise that they are implemented "for the purpose of securing prompt and orderly conduct of business and the failure to strictly follow them can be injurious to no one." Norman J. Singer, Sutherland Statutes and Statutory Construction, § 57:20 (6th ed. 2001). However, such provisions in a tax statute must be carefully examined "because public or private rights may often be dependent on them." Id. While we have held that a provision related to the time of performance is appropriately construed as directory "where no prejudice has been shown," see Garrett v. Tenn. Dep't of Safety, 717 S.W.2d 290, 291 (Tenn. 1986), ultimately, the construction of language as mandatory or directory is determined "by consideration of the entire statute, including its nature and purpose, and the consequences that would result from a construction one way or the other." Presley, 860 S.W.2d at 860 (citing Stiner v. Powells Valley Hardware Co., 75 S.W.2d 406, 407 (Tenn. 1934)). The essential inquiry is whether the provision at issue "relates to matters material or immaterial, to matters of convenience or of substance." Stiner, 75 S.W.2d at 407-08.

In considering the consequences of construing the collection time set forth at section 8 as mandatory or discretionary, we take note of a decision of the Appellate Court of Illinois, County of Du Page v. RWS Dev., Inc., 643 N.E.2d 242 (Ill. App. Ct. 1994). Under the facts in that case, a county ordinance required residential developers to pay a "fair share transportation impact fee" on each residence constructed in the county and provided that the fee "shall be assessed and collected in full prior to the issuance of a building permit." Id. at 243. The defendant developer obtained building permits for fifty residences, which he then built and sold. Id. Sometime thereafter, the county discovered that it had neglected to collect the impact fees due from the developer when the building permits were issued and sought to collect the fees at that later time. Id. The appellate court ruled that the provision of the ordinance designating the time for collection was mandatory and required "strict and timely compliance" by the county. Id. at 245. While acknowledging the general rule that a statutory provision specifying the time for performance of an official duty is directory, the court noted that the subject provision governing collection of the impact fees was not merely for the guidance of public officials, and observed that collection of the fee prior to issuance of the building permit allowed developers to include the cost of the fee in the price of completed residences. The court further noted that collection of the fee at that time also allowed individuals building a single residence the chance to consider the expense of the impact fee before beginning construction. Id. Because of "the harsh consequences" that could result from the county's failure to collect the fee prior to issuance of the building permit, the court construed the word "shall" to be mandatory and denied the county the right to collect the fee at a later time. Id.

8

Like the fee in <u>RWS</u>, the purpose of the County privilege tax is to ensure that those responsible for residential development pay their fair share for the cost of new facilities made necessary by the development. As in that case, the Act in the present matter specifies when the tax is to be collected. It is undisputed that the County's present attempt to collect additional amounts of tax is being undertaken long after the construction and sale of the homes in question and as in <u>RWS</u>, if the Act is construed to allow such belated collection, the developers in the County will have been precluded from including the full amount of the tax in the sales price of the completed residence and passing that cost along to the home buyer and will, therefore, suffer the prejudice envisioned by the court in <u>RWS</u>. Further, as in <u>RWS</u>, if the County is authorized to collect the tax at such a late date, any individuals building a single residence in the County will be precluded from considering the full expense of the tax before beginning construction. These consequences compel us to construe the word "shall" in section 8 to be mandatory.

As we have noted, the stated intent of the Act as set forth at section 3 is "to ensure and require that the persons responsible for new development share in the burdens of growth by paying their *fair share* for the cost of new and expanded public facilities made necessary by such development." (Emphasis added.) The County apparently contends that a developer has not met this "fair share" requirement until the developer has paid the tax based upon every gross square foot of the residence as actually constructed. We do not agree. Under our construction of section 8, the tax is to be collected at the time of application for the building permit, and because the actual constructed square footage is not a matter of absolute certainty at that point in time, the tax must necessarily be a tax upon projected square footage. The County realizes an advantage in collecting the tax at the time the building permit is applied for in that it receives and has use of revenue earlier than it would were the tax not collected until completion of construction. The developer suffers commensurate detriment as a consequence of an earlier loss and use of funds paid to the County when the building permit is applied for. We believe this benefit to the County and detriment to the taxpayer offset any losses or gains the parties might otherwise experience as the result of a discrepancy between projected square footage and actual square footage and that under these circumstances, a developer pays a "fair share" under the Act in paying the tax upon projected square footage.

Finally, again referencing section 11, which provides that the Act shall not limit the County's power to collect the tax by other statutorily authorized means, the County argues that it has authority to collect the additional taxes it seeks as a result of authority granted the county mayor under Tennessee Code Annotated section 5-6-108(6) (2005), which, in pertinent part, empowers the mayor to "[a]udit and settle the accounts of the county trustee, and those of any other collector or receiver of county revenue, taxes, or incomes, payable into the county treasury. . . ." The County asserts that privilege taxes are specifically contemplated as the subject of such an audit, referencing Tennessee Code Annotated section

9

9-3-202 (1999), which provides that when such an audit is undertaken, "the auditors shall also investigate and ascertain what . . . privilege . . . taxes are delinquent and unpaid . . . and to ascertain the correct and proper amount of such . . . privilege . . . taxes that have not been paid."

As indicated, we have determined that the privilege tax due under the Act is to be collected at the time of the application for a building permit and is therefore, necessarily a tax based upon projected square footage. As we have construed the Act, it does not impose a tax upon actual square footage as constructed. While the above cited Code sections authorize the mayor and the County to audit and settle accounts with respect to taxes that are due and payable, they do not authorize the mayor or the County to settle accounts that are not due and payable. The amounts that the County seeks to collect in this case do not represent taxes due under the law as we have interpreted it and are, therefore, not collectible. "A municipal corporation has only such power to levy taxes for the privilege of doing business as is given by the legislature." Neuhoff Packing Co. v. City of Chattanooga, 234 S.W.2d 824, 825 (Tenn. 1950) (citing Int'l Trading-Stamp Corp. v. City of Memphis, 47 S.W. 136 (1898)); see also Maury County ex rel. Maury Reg'l Hosp. v. Tenn. State Bd. of Equalization, 117 S.W.3d 779, 785 (Tenn. Ct. App. 2003) ("Counties have no inherent power of taxation and can impose taxes only in the manner and under such authority as is expressly conferred by statute.") (citing S. Ry. Co. v. Hamblen County, 92 S.W. 238, 239 (1906)).

In summary, we hold that after the County collects the privilege tax based on the projected square footage, the Act prohibits the County from collecting additional privilege taxes based upon the actual square footage as constructed. In so holding, we note that this Court is precluded from inquiring into the "reasonableness of [a] statute or substitut[ing its] own policy judgments for those of the legislature." Gleaves v. Checker Cab Transit Corp., 15 S.W.3d 799, 803 (Tenn. 2000) (quoting BellSouth Telecomms. v. Greer, 972 S.W.2d 663, 673 (Tenn. Ct. App. 1997). Thus, while we do not disagree with the proposition that it would be appropriate to tax new development on actual constructed square footage rather than projected square footage, that is not what the Act allows. Because we are without authority to rewrite the Act, if the County seeks authority to collect the tax at a later date, its recourse lies not with the judiciary, but with the legislature.

### III. Conclusion

For the reasons stated herein, we conclude that the Act does not authorize the County's attempt to collect additional privilege taxes representing the alleged discrepancy between the privilege tax paid based upon the projected square footage and the amount of privilege tax based upon the actual square footage as constructed. Accordingly, the judgment of the Court of Appeals is reversed, the trial court's grant of summary judgment in favor of

10

Williamson County is vacated, summary judgment in favor of Home Builders Association of Middle Tennessee is granted, and the cause is remanded to the trial court for further proceedings as necessary. Costs of this appeal are assessed against Williamson County, for which execution may issue if necessary.

_____

SHARON G. LEE, JUSTICE