IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
June 2, 2011 Session

**RANDALL D. KISER v. IAN J. WOLFE ET AL.**

**Appeal by Permission from the Court of Appeals, Eastern Section**
**Circuit Court for Bradley County**
**No. V-05-869      Lawrence Howard Puckett, Judge**

**No. E2009-01529-SC-R11-CV - Filed August 24, 2011**

SHARON G. LEE, J., concurring in part and dissenting in part.

I concur with the majority's conclusion that our review should include all three pages of the insurance application appended to the summary judgment motion. I, however, would construe Tennessee Code Annotated section 56-7-1201 (2008) to require more than merely the insured's signature at the end of an application for insurance in order for the insured to effectively reject "in writing" the amount of uninsured motorist ("UM") coverage otherwise mandated by the statute.

The statute at issue provides in pertinent part:

(a) Every automobile liability insurance policy delivered, issued for delivery or renewed in this state, covering liability arising out of the ownership, maintenance, or use of any motor vehicle . . . shall include uninsured motorist coverage . . . .

(1) The limits of the uninsured motorist coverage shall be equal to the bodily injury liability limits stated in the policy.

Tenn. Code Ann. § 56-7-1201 (emphasis added). The language of the statute is mandatory. Home Builders Ass'n of Middle Tenn. v. Williamson Cnty., 304 S.W.3d 812, 819 (Tenn. 2010) ("As a general matter, when the word 'shall' is used in a statute it is construed to be mandatory, not discretionary."); see also Pugh's Lawn Landscape Co. v. Jaycon Dev. Corp., 320 S.W.3d 252, 259 (Tenn. 2010). The exception to the requirement

1

that UM coverage limits shall be equal to stated bodily injury liability limits is provided in subsection (a)(2) of the statute, which provides in relevant part, "However, any named insured <u>may reject in writing</u> the uninsured motorist coverage completely or select lower limits of the coverage but not less than the minimum coverage limits in § 55-12-107." Tenn. Code Ann. § 56-7-1201(a)(2) (emphasis added).

We are charged with interpreting statutes "'as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous.'" <u>Culbreath v. First Tenn. Bank Nat'l Ass'n</u>, 44 S.W.3d 518, 524 (Tenn. 2001) (quoting <u>Cafarelli v. Yancy</u>, 226 F.3d 492, 499 (6th Cir. 2000)); <u>see</u> <u>Leab v. S & H Mining Co.</u>, 76 S.W.3d 344, 350 n.3 (Tenn. 2002) ("[W]e must avoid constructions which would render portions of the statute meaningless or superfluous.").

As the majority opinion observes, before 1982, the statute required UM coverage equal to liability coverage unless "any insured named in the policy shall reject the coverage." Tenn. Code Ann. § 56-7-1201 (1980). In 1982, the Tennessee General Assembly amended the statute to specifically require "*in writing*" a rejection of UM coverage or a selection of UM limits lower than the stated liability limits. 1982 Tenn. Pub. Acts Ch. 835, 472-73. As the court stated in <u>Dunn v. Hackett</u>,

> When the legislature makes a change in the language of a statute, the general rule is that such change raises a presumption that the legislature intended a departure from the old law. . . . We are persuaded that when the legislature changed the language in the uninsured motorist statute from "may reject" to "may reject *in writing*" and required the writing to be a part of the policy, the legislature evidenced its intent that the only way to eliminate uninsured motorist coverage was a written rejection as a part of the policy.

833 S.W.2d 78, 81 (Tenn. Ct. App. 1992) (emphasis in original) (citation omitted).

A policy of insurance is a contractual agreement between the insured and the insurer. Tenn. Code Ann. § 56-7-101 (2008). Before 1982, an applicant signed the application for insurance. If the insured's signature at the end of an application alone demonstrated a sufficient rejection of UM coverage or selection of lower UM limits, there would have been no need for the 1982 amendment specifically requiring the rejection to be "in writing." The majority's conclusion that the mere signature at the end of the insurance application, with no further "writing" on the insured's part, suffices to satisfy the statute's requirement, thwarts the intent of the legislature and renders the "in writing" requirement of subsection (a)(2) meaningless and superfluous. Insurance companies are now at liberty to

write policies with whatever UM limits they choose (subject to the statutory minimum referenced in section 56-7-1201(a)(2)), and as long as the applicant signs at the end of the application, the applicant will be deemed to have effectively rejected UM coverage or selected UM limits lower than those otherwise mandated by subsection (a)(1).

Further, assuming arguendo that the unpublished Court of Appeals decision relied on by the majority, Peak v. Travelers Indemnity Co., was correctly decided, it is clearly distinguishable. In Peak, the court was presented with undisputed proof that the insured, Mr. Peak, specifically requested UM coverage in an amount lower than the liability limits; the insurance agent in Peak filed an affidavit testifying that:

> The "Uninsured Motorist Coverage Option Selection Form" reflects $60,000 in uninsured motorist bodily injury and property damage coverage because those were the limits that Mr. Peak requested. *The selection was marked and the amount was handwritten in by me at Mr. Peak's instructions. . . . Mr. Peak specifically declined uninsured motorist coverage equaling his liability limits and specifically instructed that the uninsured motorist limits equals $60,000.* Mr. Peak also signed an acceptance of a quote for $300,000 liability limits and $60,000 U.M. limits.

2002 WL 31890892, at *4 (emphasis in original). The Court of Appeals found "*the crucial undisputed fact* is that Mr. Peak requested of [agent] Ms. Barnes $60,000 in uninsured/underinsured motorist coverage and Ms. Barnes penned-in the $60,000 figure on the selection form, then forwarded the form to Mr. Peak who signed it on October 10, 1996 and returned it to Ms. Barnes." Id. at *5 (emphasis added). There is no such undisputed proof in the case before us regarding the insured's intent.

In this case, Consumers Insurance Company drafted the following language in its application in an obvious attempt to satisfy the "in writing" requirement at issue here:

> 1. I SELECT UNINSURED MOTORISTS BODILY INJURY LIMIT(S) INDICATED IN THIS APPLICATION. _____ (INITIALS)
>
> 2. I REJECT UNINSURED MOTORISTS BODILY INJURY AND PROPERTY DAMAGE COVERAGE IN ITS ENTIRETY. _____ (INITIALS)
>
> 3. I REJECT ONLY UNINSURED MOTORISTS PROPERTY DAMAGE COVERAGE IN ITS ENTIRETY. _____ (INITIALS)

The fact that the agent failed to have Mr. Lawson sign, initial, or otherwise indicate in writing his agreement or consent to any of the three options raises a legitimate and reasonable inference that he did not agree to the reduced UM limits. As the majority holds, the fact that the first page of the application lists UM limits in the amount of $60,000 raises a reasonable inference that the parties discussed UM coverage and agreed on this reduced amount. The language of the application is thus susceptible to more than one reasonable interpretation – actually two possible reasonable interpretations that are diametrically opposed. As this Court held in Tata v. Nichols,

> Where language in an insurance policy is susceptible of more than one reasonable interpretation, however, it is ambiguous. See, e.g., Moss v. Golden Rule Life Ins. Co., 724 S.W.2d 367, 368 (Tenn. App. 1986). Where the ambiguous language limits the coverage of an insurance policy, that language must be construed against the insurance company and in favor of the insured. Allstate Ins. Co. v. Watts, 811 S.W.2d 883, 886 (Tenn. 1991).

848 S.W.2d 649, 650 (Tenn. 1993). I would hold that Mr. Lawson's refusal or failure to initial or sign any of the three listed options, particularly the one stating "I select uninsured motorists bodily injury limit(s) indicated in this application," created an ambiguity in the application that the trial court should have resolved in favor of the insured, in accordance with Tata.

The purpose of the UM statute is "to provide protection for an innocent party by making the insurance carrier stand as the insurer of the uninsured motorist." Dunn, 833 S.W.2d at 82; see also Sherer v. Linginfelter, 29 S.W.3d 451, 454 (Tenn. 2000); Marler v. Scoggins, 105 S.W.3d 596, 598 (Tenn. Ct. App. 2002). The plaintiff in this case, Mr. Kiser, is such an innocent party who was harmed by the negligence of an insufficiently-insured motorist. I would hold that the General Assembly, by its passage of Tennessee Code Annotated section 56-7-1201, intended to provide innocent Tennessee drivers a greater degree of protection than does the majority opinion's interpretation of this statute. Accordingly, I respectfully dissent.


_____
SHARON G. LEE, JUSTICE

4