IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 20, 2019 Session

**PAMELA DALLAS v. SHELBY COUNTY BOARD OF EDUCATION**

Appeal from the Chancery Court for Shelby County
No. CH-16-1736-3  JoeDae L. Jenkins, Chancellor

————————————————————————

No. W2018-01661-COA-R3-CV

————————————————————————

Dismissed teacher filed an action against the school board under the Teacher Tenure Act, or alternatively, under the Continuing Contract Law. The board of education filed a motion for summary judgment as to both claims, which the trial court ultimately granted. We conclude that the trial court did not err in granting summary judgment under the Teacher Tenure Act because the plaintiff teacher was not tenured at the time of her dismissal. However, we reverse the grant of summary judgment on the plaintiff teacher's claim under the Continuing Contract Law.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part; Reversed in Part**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which ARNOLD B. GOLDIN and KENNY ARMSTRONG, JJ., joined.

Richard L. Colbert and C. Joseph Hubbard, Nashville, Tennessee, for the appellant, Pamela Dallas.

Stephanie Denzel, Memphis, Tennessee, for the appellee, Shelby County Board of Education.[1]

**OPINION**

**BACKGROUND**

_____

[1] No attorney for the Shelby County Board of Education appeared at oral argument. Following oral argument, Attorney Kenneth M. Walker, III filed a notice of appearance on behalf of the Shelby County Board of Education.

Plaintiff/Appellant Pamela Dallas was employed by the Shelby County Schools from the mid-1990's until 2007. At the time of her voluntary resignation, she was a tenured teacher in good standing. Ms. Dallas thereafter taught for one year in the McNairy County School District.

Next, Ms. Dallas taught with the Shelby County Schools for a portion of both the 2008-2009 school year and the 2009-2010 school years. Ms. Dallas thereafter taught with the Shelby County Schools for the entirety of the 2010-2011 school year; however, Ms. Dallas's contract was not renewed after an unsatisfactory performance evaluation. Although Ms. Dallas attempted to contest the nonrenewal, it was upheld. Ms. Dallas admits that she was not tenured during the 2008-2009, 2009-2010, or 2010-2011 school years.

Ms. Dallas then sought employment with the Memphis City Schools, where she taught for a portion of the 2011-2012 school year. Although she worked for the Memphis City Schools for the entire 2012-2013 school year, Ms. Dallas changed to a different school on multiple occasions, eventually landing at Willow Oaks Elementary School ("Willow Oaks"). Ms. Dallas continued teaching at Willow Oaks, where she remained for the 2012-2013, 2013-2014, and 2014-2015 school years. During this time frame, however, the administration of Willow Oaks transferred from the Memphis City Schools to the Shelby County Schools.[2] As such, while Ms. Dallas was employed by the Memphis City Schools for the 2012-2013 school year, she was a Shelby County Schools employee for the 2013-2014 and 2014-2015 school years. In April 2015, Ms. Dallas received oral notice that her position at Willow Oaks was to be eliminated. On or around May 18, 2015, Ms. Dallas filed a grievance to contest the fact that she had been "excessed." Specifically, Ms. Dallas requested to stay at Willow Oaks or to be assigned to another school. The grievance was initially denied on May 21, 2015, but Ms. Dallas appealed. On or about June 16, 2015, Ms. Dallas's grievance was again denied, noting that Ms. Dallas was the lowest evaluated teacher for her grade at Willow Oaks.[3]

---

[2] On September 28, 2011, a consent decree was entered in federal litigation between the Board of Education of Shelby County and the Memphis City Board of Education providing for consolidation of the two school systems. ***Bd. of Educ. of Shelby Cty., Tennessee v. Memphis City Bd. of Educ.***, No. 11-2101, 2011 WL 13130644, at *4 (W.D. Tenn. Sept. 28, 2011). The consent decree provided that, effective October 1, 2011, both the Memphis and Shelby County school systems would be governed by the Shelby County Board of Education. ***Id.*** However, the two school systems were to "remain separate school systems until they are combined at the start of the school year in 2013." ***Id.*** at *5. A new Shelby County Board of Education would be elected in August 2012 to administer the consolidated school system. ***Id.*** As discussed in detail *infra*, the parties dispute whether the post-consolidation Shelby County Schools was merely a continuation of the pre-consolidation Shelby County Schools or an entirely new system.

[3] The documents surrounding the grievance also noted that while Ms. Dallas was "excessed" due to the elimination of a position at Willow Oaks, another teacher later resigned, leaving an open position. Rather than re-employ Ms. Dallas, the principal was allowed to post the position.

Meanwhile, on June 12, 2015, Shelby County Schools sent a letter by registered mail notifying Ms. Dallas that her contract was not renewed. Although the letter was attempted to be delivered on June 15, 2015, at Ms. Dallas's proper address, the letter went unclaimed. Another letter was sent to Ms. Dallas concerning the termination of her contract on August 25, 2015. Ms. Dallas was not reemployed by the Shelby County Schools following the 2014-2015 school year, but did attain another position with a different school system.

On November 10, 2016, Ms. Dallas filed an action against the Shelby County Board of Education ("the Board of Education" or "the Board") in Shelby County Chancery Court to contest her dismissal. Ms. Dallas thereafter filed an amended complaint on February 14, 2017. Therein, Ms. Dallas asserted that she obtained tenure at the end of the 2013-2014 school year and was dismissed without charges in violation of the Teacher Tenure Act. In the alternative, Ms. Dallas asserted that the notice of nonrenewal violated the Continuing Contract Law. Eventually, the Board of Education filed a motion for summary judgment on the basis that, *inter alia*, Ms. Dallas was not a tenured teacher entitled to relief under that Act. In support, the Board's statement of undisputed material facts noted that it was undisputed that in September 2014, the Board of Education voted to grant tenure to a number of eligible teachers, but Ms. Dallas was not named on a list of teachers granted tenure. Moreover, Ms. Dallas did not dispute that she never received any written notification that she had been granted tenure while teaching at Willow Oaks. Ms. Dallas asserted, however, that by the time her employment was terminated, she "already had tenure during the 2014-2015 school year since she completed her second probationary year following the 2013-2014 school year and was reemployed for the following year." The Board also argued that Ms. Dallas was not entitled to rely on the Continuing Contract Law or, in the alternative, that it was not violated. The trial court granted the Board of Education's motion, dismissing Ms. Dallas's claims under both the Teacher Tenure Act and the Continuing Contract Law. Ms. Dallas thereafter appealed.

## ISSUES PRESENTED

Each party raises a number of lengthy issues. In the interest of brevity, we summarize the issues as follows:

1. Whether the trial court correctly granted summary judgment as to Ms. Dallas's claim under the Teacher Tenure Act by concluding that Ms. Dallas was not a tenured teacher at the time of her dismissal.
2. In the alternative, whether the trial court erred in concluding that Ms. Dallas cannot prevail on her claim under Continuing Contract Law with regard to the notice of nonrenewal sent to Ms. Dallas at the conclusion of the 2014-2015 school year.

STANDARD OF REVIEW

This case was decided on a motion for summary judgment. Summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion; and (2) the moving party is entitled to judgment as a matter of law on the undisputed facts. Tenn. R. Civ. P. 56.04. In cases where the moving party does not bear the burden of proof at trial, the movant may obtain summary judgment if it: (1) affirmatively negates an essential element of the nonmoving party's claim; or (2) demonstrates that the nonmoving party's evidence at the summary judgment stage is insufficient to establish an essential element of the nonmoving party's claim. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015), *cert. denied*, 136 S. Ct. 2452, 195 L. Ed. 2d 265 (Tenn. 2016).

On appeal, this Court reviews a trial court's grant of summary judgment *de novo* with no presumption of correctness. *Rye*, 477 S.W.3d at 250 (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)). In reviewing the trial court's decision, we must view all of the evidence in the light most favorable to the nonmoving party and resolve all factual inferences in the nonmoving party's favor. *Luther v. Compton*, 5 S.W.3d 635, 639 (Tenn. 1999); *Muhlheim v. Knox Cnty. Bd. of Educ.*, 2 S.W.3d 927, 929 (Tenn. 1999). If the undisputed facts support only one conclusion, then the court's summary judgment will be upheld because the moving party was entitled to judgment as a matter of law. *See White v. Lawrence*, 975 S.W.2d 525, 529 (Tenn. 1998); *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995). When a moving party has filed a properly supported motion for summary judgment, the nonmoving party must respond by pointing to specific evidence that shows summary judgment is inappropriate. *Rye*, 477 S.W.3d at 264–65.

To the extent that this case requires that we construe statutes, our review is also de novo. *Freeman v. Marco Transp. Co.*, 27 S.W.3d 909, 911–12 (Tenn. 2000) ("Issues of statutory construction are questions of law and shall be reviewed de novo without a presumption of correctness."). In construing statutes, we keep the following guidance in mind:

> Our resolution of this issue is guided by the familiar rules of statutory construction. Our role is to determine legislative intent and to effectuate legislative purpose. The text of the statute is of primary importance, and the words must be given their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose. When the language of the statute is clear and unambiguous, courts look no farther to ascertain its meaning. When necessary to resolve a statutory ambiguity or conflict, courts may consider matters beyond the statutory text, including public policy, historical facts relevant to the enactment of the statute, the background and purpose of the statute, and the entire statutory scheme. However, these non-codified

external sources "cannot provide a basis for departing from clear codified statutory provisions."

*Mills v. Fulmarque, Inc.*, 360 S.W.3d 362, 368 (Tenn. 2012) (citations omitted).

## DISCUSSION

## I.

Ms. Dallas's primary claim in this case is that she could not be terminated without compliance with the notice and hearing provisions of the Teacher Tenure Act. *See* Tenn. Code Ann. § 49-5-511(a) (stating that no teacher may be dismissed except on the basis of "incompetence, inefficiency, neglect of duty, unprofessional conduct, and insubordination"); Tenn. Code Ann. § 49-5-512(a) (stating that tenured teachers who are provided with notice of charges are entitled to demand a full hearing). Of course, in order to prevail on her Teacher Tenure Act claim, Ms. Dallas must show that she was, in fact, a tenured teacher at the time of her dismissal. Here, there is no dispute that Ms. Dallas left the Shelby County Schools in 2007 as a tenured teacher. As such, she asserts that she was entitled to, and completed, a shortened probationary period by the time of the end of the 2013-2014 school year. When she was reemployed the following school year, Ms. Dallas contends that she was effectively tenured.

The Board of Education disagrees, arguing that Ms. Dallas was neither entitled to nor did she complete any shortened probationary period by the end of the 2013-2014 school year. Moreover, the Board of Education insists that regardless of the passage of time, Ms. Dallas could not attain tenure without the recommendation of the director of schools and the election of the Board of Education, neither of which has been shown in this case.

The Teacher Tenure Act contained the following qualifications necessary to attain tenure at the time Ms. Dallas asserts that she acquired that status:

Any teacher who meets all of the following requirements is eligible for "tenure":

(1) Has a degree from an approved four-year college or any career and technical teacher who has the equivalent amount of training established and licensed by the state board of education;
(2) Holds a valid teacher license, issued by the state board of education, based on training covering the subjects or grades taught;
(3) Has completed a probationary period of five (5) school years or not less than forty-five (45) months within the last seven-year period, the last two

(2) years being employed in a regular teaching position rather than an interim teaching position;

(4) Has received evaluations demonstrating an overall performance effectiveness level of "above expectations" or "significantly above expectations" as provided in the evaluation guidelines adopted by the state board of education pursuant to § 49-1-302, during the last two (2) years of the probationary period; and

(5) Is reemployed by the director of schools[4] for service after the probationary period.

Tenn. Code Ann. § 49-5-503(a) (2014);[5] *see also* Tenn. Code Ann. § 49-5-504(a) (2014) (stating that a certain number of years served as a probationary teacher and a sufficient evaluation score must be met "prior to becoming eligible for tenure").[6]

There is no dispute that Ms. Dallas meets the first two requirements. Instead, one of the central disputes[7] of Ms. Dallas's Teacher Tenure Act claim is whether she completed a sufficient probationary period. Specifically, Ms. Dallas contends that her probationary period was completed at the end of the 2013-2014 school year and that her tenure status was cemented when she was reemployed the following year. In support, Ms. Dallas relies on the shortened probationary period contained in Tennessee Code Annotated section 49-5-504(d):

A teacher who has attained tenure status in a school system and later resigns from the system shall serve a two-year probationary period upon reemployment by the system, unless the probationary period is waived by the board of education upon request of the director of schools. Upon completion of the two-year probationary period, the teacher shall be eligible for tenure and shall be either recommended by the director of schools for tenure or nonrenewed; provided, however, that the teacher cannot be continued in employment if tenure is not granted by the board of education.[8]

---

[4] Tennessee Code Annotated section 49-2-301(a) states that the director of schools may also be referred to as superintendent.

[5] Section 49-5-503 was amended in 2015. *See* 2015 Tenn. Laws Pub. Ch. 158 (H.B. 108) (effective April 26, 2015). No party asserts that the amendment is relevant to this appeal.

[6] Again, section 49-5-503 was amended in 2015 but is not relevant to this appeal. *See* 2015 Tenn. Laws Pub. Ch. 158 (H.B. 108).

[7] The parties also disputed Ms. Dallas's evaluation scores. Because of how we resolve this appeal, however, we will not tax the length of this Opinion with facts relevant to that issue.

[8] Prior to July 1, 2011, the probationary period was merely one year. *See* Tenn. Code Ann. § 49-5-504 (2010); *see also* 2011 Tenn. Laws Pub. Ch. 70 (S.B. 1528) (effective July 1, 2011).

Thus, as we perceive it, Ms. Dallas argues that when she was employed by the Memphis City Schools in 2012-2013, this two year probationary period began to run and ended at the end of the 2013-2014 school year.

The Board of Education makes several arguments in response to Ms. Dallas's assertion. First, the Board of Education contends that once Ms. Dallas was dismissed by the Shelby County Schools for the 2010-2011 school year, Ms. Dallas could no longer rely on any probationary period permitted by section 49-5-504(d). In essence, the Board of Education argues that Ms. Dallas most recently left employment with the Shelby County Schools as a non-tenured teacher and therefore is not entitled to a shortened probationary period upon reemployment. Under this theory, Ms. Dallas was a new hire subject to a five-year probationary period, which was undisputedly not met at the time of Ms. Dallas's dismissal.

The Board also argues that Ms. Dallas cannot rely on any shortened probationary period because she was never reemployed by the same system due to the change in the school systems following the merger of the Memphis City and Shelby County Schools. As previously discussed, section 49-5-504(d) states that where a teacher has "attained tenure status in a school system[,]" a shortened probationary period is applicable "upon reemployment by the system." In support, the Board notes that the consent decree that created the consolidated Shelby County Schools provided that the consolidated school system would be operated by a separate, newly constituted Board of Education. As such, the Board asserts that "[a]s an employee of a new district, . . . which did not exist prior to July 1, 2013, [Ms. Dallas] could not take advantage of the shortened probationary period for previously employed and tenured employees." Again, under this theory, the five-year probationary period would apply.

Moreover, the Board argues that even if pre-consolidation Shelby County Schools and post-consolidation Shelby County schools are considered the same "system," Ms. Dallas's employment with the pre-consolidation Memphis City Schools is nevertheless not applicable for purposes of determining whether she met any probationary period. Here, in order for Ms. Dallas to prevail in her argument that she was eligible for tenure at the end of the 2013-2014 school year, she must necessarily include her employment for the 2012-2013 school year to reach the two-year probationary period. Of course, Ms. Dallas was not employed by the Shelby County Schools during this time, but the Memphis City Schools. It is undisputed that Memphis City Schools and Shelby County Schools were separate and distinct "systems" during the 2012-2013 school year. *See **Bd. of Educ. of Shelby Cty., Tennessee v. Memphis City Bd. of Educ.***, No. 11-2101, 2011 WL 13130644, at *5 (W.D. Tenn. Sept. 28, 2011) ("The Memphis and Shelby County school systems shall remain separate school systems until they are combined at the start of the school year in 2013."). Moreover, Ms. Dallas admitted in her deposition that she was a "new hire" of the Memphis City Schools when she began her employment there. Thus, considering the language of section 49-5-504(d) in isolation, Ms. Dallas cannot

rely on employment by a different system to meet her probationary period for purposes of section 49-5-504(d). Thus, at the end of the 2012-2013 school year, Ms. Dallas was merely one year into the five-year probationary period applicable to new hires, Tenn. Code Ann. § 49-5-503(a)(3), rather than one year into the two-year shortened probationary period applicable in the context of "reemployment." Tenn. Code Ann. § 49-5-504(d).

Ms. Dallas contends, however, that section 49-5-504(d) cannot be read in isolation, but must be considered in conjunction with Tennessee Code Annotated section 49-5-203, which provides as follows:

> (a) The change in the governmental structure of a school system or institution through the process of annexation, unification, consolidation, abolition, reorganization, transfer of the control and operation of a school system or institution to a different type governmental structure, organization or administration, or creation of a city school system shall not impair, interrupt or diminish the rights and privileges of a then existing teacher; and such rights and privileges shall continue without impairment, interruption or diminution.
> (b) If the teacher becomes the employee of another school system or institution as a result of a change in the governmental structure, then the rights and privileges of the teacher shall continue without impairment, interruption or diminution as obligations of the new government, organization or administration.
> (c) "Rights and privileges," as used in this section, includes, but is not limited to, salary, pension or retirement benefits, sick leave accumulation, tenure status and contract rights, whether granted by statute, private act or governmental charter.

Thus, Ms. Dallas asserts that she "was entitled to have her 2012-2013 service in the Memphis City School System treated as the first of those two years of probationary service" required under section 49-5-504(d).

The Board responds that probationary status is not a "right" under section 49-5-203(c). In support, the Board notes that probationary status is generally defined as the lack of tenure. *See* Tenn. Code Ann. § 49-5-501(9) (defining probation as "a condition and period of trial during which a teacher is under observation to determine the teacher's fitness for tenure status"); Tenn. Code Ann. § 49-5-501(10) (defining tenure as "the employment status other than probation that a teacher may be under while teaching in the public schools"). Moreover, the Board notes that probationary status cannot constitute a "right" where achieving tenure following the completion of the probationary period is subject to other requirements, discussed in detail *infra*.

Regardless, we cannot conclude that Ms. Dallas's probationary status was protected in the manner that she suggests. Here, as previously discussed, at the time of the merger, the only probationary status that Ms. Dallas had achieved was one year into a five-year probationary period. Essentially, Ms. Dallas contends that under section 49-5-203, she is entitled to claim both the one year in service to a separate school system and the two-year probationary period upon reemployment by the Shelby County Schools. Respectfully, we cannot agree. Although the statute is remedial, and therefore broadly construed, its purpose is "to ensure that no rights of the former teachers of one school system would be diminished by the transfer of that system to another." ***Knox Cty. v. City of Knoxville***, No. C.A. 736, 1987 WL 31640, at *6 (Tenn. Ct. App. Dec. 30, 1987), *aff'd as modified and remanded*, 786 S.W.2d 936 (Tenn. 1990); *see also* ***Wagner v. Elizabethton City Bd. of Ed.***, 496 S.W.2d 468, 471 (Tenn. 1973) (holding that a "transfer of the control and operation of the school should not impair, interrupt, or diminish their rights and privileges, including their tenure status"). However, "[section] 49-5-203 gives a teacher no greater rights against her new employer than those she would have had against her former employer." ***Hardaway v. Bd. of Educ., Hamilton Cty. Sch.***, No. E2003-01547-COA-R3-CV, 2004 WL 533941, at *4 (Tenn. Ct. App. Mar. 18, 2004). To allow Ms. Dallas to utilize her year of employment with the Memphis City Schools upon reemployment by the Shelby County Schools results in Ms. Dallas's four years remaining to be eligible for tenure reduced to merely a single year. Such a scenario clearly allows Ms. Dallas to place herself in a better position with regard to her new employer than she had against her previous employer. Nothing in section 49-5-203's protection against the impairment of existing rights or cited by Ms. Dallas leads us to conclude that such a result is contemplated by this provision.

Based on the foregoing, even assuming both that Ms. Dallas was in fact "reemployed" by the Shelby County Schools for the 2013-2014 school year and that Ms. Dallas was at that time eligible for the two-year reduced probationary period, Ms. Dallas was eligible for tenure, at the earliest, upon reemployment for the 2015-2016 school year. *See* Tenn. Code Ann. § 49-5-504(a) (requiring that a teacher both complete the probationary period and be reemployed after the probationary period to be eligible for tenure). There is no dispute that Ms. Dallas was not reemployed by the Shelby County Schools for the 2015-2016 school year. As such, she did not meet the requirements for eligibility for tenure at the time of her dismissal.

Moreover, even if we were to conclude that Ms. Dallas was in some way eligible for tenure upon her reemployment for the 2014-2015 school year, we would nevertheless conclude that Ms. Dallas did not achieve tenure status. As previously discussed, sections 49-5-503(a) and -504(a) contain the requirements for tenure *eligibility*. Tenn. Code Ann. § 49-5-503(a) (noting that teacher who meets the requirements is "eligible" for tenure); *see also* Tenn. Code Ann. § 49-5-504(a) (containing requirements that must be met to be "eligible for tenure"). To be eligible generally means to be "[f]it and proper *to be selected*" for an office or privilege. *Black's Law Dictionary* 597 (9th ed. 2009) (emphasis

added). As such, the Tennessee Supreme Court has held long held that "local school boards must take affirmative action in determining the fitness of teachers for tenure status." ***Snell v. Bros.***, 527 S.W.2d 114, 118 (Tenn. 1975). Consequently, "a teacher does not acquire permanent tenure status by mere passage of time." ***Id.***

Ms. Dallas argues, however, that more recent changes to Tennessee law particularly the 1992 enactment of the Education Improvement Act of 1992 ("the Education Improvement Act"), show that ***Snell*** and its progeny are no longer good law. We respectfully disagree. Various sections of the Tennessee law as it currently exists and caselaw interpreting it make clear that eligibility alone does not confer tenure status on a teacher. For example, section 49-5-504(b) specifically states that "[n]otwithstanding any other law to the contrary, once a teacher is eligible for tenure, the teacher shall be either recommended by the director of schools for tenure or nonrenewed[.]"Likewise, Tennessee Code Annotated section 49-2-301(b)(1)(J) currently provides that it is the duty of the director of schools to "[r]ecommend to the board teachers who are eligible for tenure or notify such teachers of their failure of reelection pursuant to § 49-5-409[.]"[9] Finally, Tennessee Code Annotated section 49-2-203(a)(1) provides that it is the duty of the Board of Education to "[e]lect, upon the recommendation of the director of schools, teachers who have attained or are eligible for tenure and fix the salaries of and make written contracts with the teachers[.]" *Compare* Tenn. Code Ann. § 49-2-203(a)(1) (stating that it is the "duty" of the board to elect teachers to tenure), *with* Tenn. Code Ann. § 49-2-203(b)(8) (which states the board had the "power**"** to provide written notice to non-tenured teachers of the reasons for the failure of reelection), *and **Washington Cty. Educ. Ass'n v. Washington Cty. Bd. of Educ.,*** No. E2018-01037-COA-R3-CV, 2019 WL 2537864, at *3 (Tenn. Ct. App. June 20, 2019) (which held that the board's power to provide written notice of reasons for reelection was merely discretionary).

A more recent case decided following the enactment of the Education Improvement Act reaches the same result as ***Snell*** based in part on the above language. *See **Ray v. Bd. of Educ. of Oak Ridge Sch.***, 72 S.W.3d 657 (Tenn. Ct. App. 2001). In ***Ray***, the plaintiff teacher was employed in the subject school system for the 1994-1995, 1995-1996, 1996-1997, and 1997-1998 school years. After her dismissal, the teacher filed a complaint against the school board alleging a violation of the Teacher Tenure Act. The trial court later granted summary judgment to the school board. ***Id.*** at 658.

---

[9] Cases involving the necessity of the director's recommendation prior to the enactment of the Education Improvement Act are therefore not dispositive of this issue. For example, in ***Sanders v. Vinson***, 558 S.W.2d 838 (Tenn. 1977), the Tennessee Supreme Court held that while affirmative action of the board is necessary, recommendation of the director is "not essential" to an employment or tenure decision. ***Id.*** at 842. The ***Sanders*** decision was based on an earlier version of the statute that stated that it was the board's duty to assign to the superintendent the duty "[t]o recommend to the board of education, supervisors, teachers, clerical assistants, and other employees in the schools[,]" which the court concluded was "not related to tenure." ***Id.*** In contrast, the current version of section 49-5-301(b)(1)(J) clearly creates a duty on the director of schools relative to tenure.

The question on appeal, like in this case, was whether the plaintiff had attained tenure when she was discharged. The qualifications for tenure eligibility in section 49-5-503 were very similar to the case-at-bar, requiring an appropriate college degree, a valid license, the completion of a probationary period, and reemployment after the probationary period. *Id.* (citing Tenn. Code Ann. § 49-5-503(2) (1997)). A different version of section 49-5-504(b) provided at the time that "[u]pon completion of the probationary period, any teacher who is reemployed or retained in the system is entitled to the tenure status for which such teacher is qualified by college training and licensing; provided, that the superintendent shall notify the board prior to reelection by the board that the teacher, if reelected, will attain tenure status." *Id.* at 663 (citing Tenn. Code Ann. § 49-5-504(b) (1997)). In affirming the trial court's ruling that the plaintiff did not have tenure at the time of her discharge, the Court cited *Bowden v. Memphis Bd. of Educ.*, 29 S.W.3d 462 (Tenn. 2000), which the *Ray* court explained as follows:

> [T]he plaintiff had not attained tenure merely by meeting the four requirements of Tenn. Code Ann. § 49-5-503(2)(A)-(D). *Id.* [at 465.] Instead, the Court held that a public school teacher's "completion of the probationary period by itself does not automatically confer permanent tenure, but rather, is 'merely a condition precedent to eligibility for tenure.'" *Id.* (emphasis added) (quoting *Sanders v. Vinson*, 558 S.W.2d 838, 842 (Tenn.1977)). The "'conference of tenurial status is dependent not only upon service but also upon affirmative action by the Board of Education.'" *Id.* (quoting *Sanders v. Vinson*, 558 S.W.2d at 842). The Court concluded that Tenn. Code Ann. § 49-5-504(b) imposes a limitation on § 49-5-503(2) in that it requires the superintendent to give notice to the school board before a teacher may attain tenure. *Id*. at 465–66 (citing *Reeves v. Etowah City Sch. Bd. of Educ.*, 806 S.W.2d 176, 179 (Tenn.1991)). Because the superintendent had not recommended plaintiff for tenure to the school board, the *Bowden* Court held that plaintiff had not met all of the requirements for tenure. *Id.*

*Ray*, 72 S.W.3d at 663.

The Court further rejected the plaintiff's claim that the *Bowden* holding was abrogated by the passage of the Education Improvement Act. As the *Ray* court explained, the 1992 act enacted sections 49-2-301(b)(1)(J)[10] and 49-2-203(a)(1), which, as previously discussed, place a duty on the director of schools to recommend a teacher for tenure and a duty on the board of education to elect all teachers for tenure. In *Ray*, however, the plaintiff asserted that the effect of the Education Improvement Act,

---

[10] Section 49-2-301(b)(1)(J) was amended in 2001 to its current form. *See* 2001 Tenn. Laws Pub. Ch. 211 (S.B. 290), *eff*. July 1, 2001. The language quoted in *Ray* is identical to the current version of the statute.

- 11 -

particularly sections 49-2-301(b)(1)(J) and 49-5-203(a)(1), was that "once a teacher is eligible for tenure, the superintendent has no statutory authority to employ that teacher again, and if the superintendent wishes that teacher to be rehired, the superintendent must recommend that teacher for tenure to the school board." *Id.* at 664. Because the superintendent recommended the plaintiff teacher for rehire, this action was sufficient to constitute notice to the board that reelection would result in tenure. *Id.*

The Court of Appeals, however, rejected the plaintiff's argument, concluding instead that completion of the necessary probationary period "is merely a condition precedent to [a teacher's] eligibility for tenure." *Id.* Because the plaintiff had no proof that the director of schools in fact gave notice to the Board of the plaintiff's eligibility for tenure, the plaintiff could not show that she met all of the requirements to achieve tenure status. *Id.*

In reaching this result, we expressly held that *Bowden* remained good law despite the passage of the Education Improvement Act. *Id.* (citing *Fulks v. Watson*, No. M1999-02800-COA-R3-CV, 2001 WL 673573, at *4 (Tenn. Ct. App. June 18, 2001) (holding, despite the passage of the Education Improvement Act, that "Tennessee law requires actual notice to and affirmative action by a board of education before tenure is conferred" and rejecting that plaintiff's argument that rehire after the probationary period was effectively a grant of tenure)). Thus, regardless of the passage of the Education Improvement Act, current controlling Tennessee law mandates that employment following the completion of the probationary period is not sufficient to confer tenure in the absence of affirmative action on the part of both the director of schools and board of education.

Ms. Dallas argues, however, that a more recent change to the Teacher Tenure Act changes the result. As previously discussed, the *Ray* decision and the decisions on which it relies, based their analysis in part on the version of section 49-5-504(b) in place at that time, which provided as follows:

> Upon completion of the probationary period, any teacher who is reemployed or retained in the system is entitled to the tenure status for which such teacher is qualified by college training and licensing; provided, that the superintendent shall notify the board prior to reelection by the board that the teacher, if reelected, will attain tenure status.

*Ray*, 72 S.W.3d at 663 (citing Tenn. Code Ann. § 49-5-504(b) (1997)). In 2006, however, the General Assembly amended section 49-5-504 to delete the above language and replace it with the following provision:

> Notwithstanding any other provision to the contrary, upon the completion of the statutory probationary period, any teacher eligible for tenure status

shall be either recommended by the director of schools for tenure or non-renewed; provided, however, that the teacher cannot be continued in employment if tenure is not granted by the board of education.

2006 Tenn. Laws Pub. Ch. 574 (S.B. 2781) (codified at Tenn. Code Ann. § 49-5-504(b)). The 2006 amendment also added a shortened probationary period for reemployed teachers, discussed *supra*. This change, Ms. Dallas argues, "eliminated the proviso that was the subject of" ***Bowden*** and the cases that rely on it.

The trial court specifically rejected Ms. Dallas's argument, concluding that although the statute had been changed as to what affirmative action was required to confer tenure, no change was made to the necessity of affirmative action. Like the trial court, we do not agree with Ms. Dallas's interpretation of the Teacher Tenure Act. In ***Bowden*** and other cases prior to 2006, the superintendent or director of schools was required to take affirmative action to confer tenure status on a teacher who met the eligibility requirements—by notifying the board of education that reelection would result in tenure. ***Bowden***, 29 S.W.3d at 465. Following the 1992 enactment of the Educational Improvement Act and the 2006 amendment to the Teacher Tenure Act, affirmative action was still required to confer tenure on a teacher—in the form of a recommendation to the board by the director of schools and an election of the teacher by the board of education. As such, nothing in the statutes governing this issue convinces us that the requirement of affirmative action to confer tenure had been altered so as to allow a teacher to gain tenure merely by reemployment following the completion of an applicable probationary period.[11] Indeed, the limited caselaw to have considered the 2006 amendment to the Teacher Tenure Act reached similar conclusions. *See **Barbee v. Union City Bd. of Educ.***, No. 11-1302, 2012 WL 12871902, at *4 (W.D. Tenn. Nov. 15, 2012), *aff'd*, 559 F. App'x 450 (6th Cir. 2014) (noting that the 2006 amendment did not result "in a fundamental change in the way tenure is awarded in Tennessee"); ***Dunn v. Spivey***, No. 2:09-0007, 2010 WL 3420343, at *5 (M.D. Tenn. Aug. 25, 2010) (noting "the absence of any indication since the passage of the amended Section 504(b) that the scheme has fundamentally changed"). The holding of ***Ray*** is therefore still applicable to Ms. Dallas's claim.

Ms. Dallas next argues that even assuming that affirmative action was indeed required to confer tenure, the trial court erred in granting summary judgment to the Board on this issue where the trial court improperly assigned "the burden of proof" to Ms. Dallas. Rather, Ms. Dallas asserts that the burden should have been placed on the Board to show that it did not affirmatively act to grant Ms. Dallas tenure due to the presumption that public officials perform their duties in good faith. In Tennessee, public officials are presumed to perform their duties in good faith, as well as to know and act in accordance

---

[11] Of course, in this case, as we previously concluded, Ms. Dallas had not completed the applicable probationary period at the time of her reemployment for the 2014-2015 school year.

with the law. ***421 Corp. v. Metro. Gov't of Nashville & Davidson Cty.***, 36 S.W.3d 469, 480 (Tenn. Ct. App. 2000) (citing ***Williams v. American Plan Corp.***, 216 Tenn. 435, 441, 392 S.W.2d 920, 923 (Tenn. 1965); ***Reeder v. Holt***, 220 Tenn. 428, 435–36, 418 S.W.2d 249, 252 (Tenn. 1967)); *see also **Martin v. Sizemore***, 78 S.W.3d 249, 266 n.5 (Tenn. Ct. App. 2001). Based on this doctrine, the Tennessee Supreme Court has held that in the absence of evidence to that effect, we are not permitted to assume that a public official was "derelict" in his or her duty. ***State ex rel. Biggs v. Barclay***, 188 Tenn. 26, 31, 216 S.W.2d 711, 714 (Tenn. 1948).

Ms. Dallas contends that this presumption actually favors her argument that she acquired tenure in this case because she was reemployed following the completion of the applicable probationary period. As previously discussed, the Teacher Tenure Act currently provides that when a teacher completes the applicable probationary period, the director of schools has two options: the teacher shall be recommended for tenure status or nonrenewed. Tenn. Code Ann. § 49-5-504(b). Under Ms. Dallas's theory, by virtue of the fact that she was reemployed for the 2013-2014 school year, we should presume that such reemployment complied with section 49-5-504(b) and she was recommended for tenure. Ms. Dallas's argument fails in two respects. First, as discussed in detail *supra*, Ms. Dallas was not reemployed following the completion of her probationary period. As such, her reemployment at that time is not evidence that the director of schools recommended her for, and the board elected to confer upon her, tenure status.

Moreover, we cannot conclude that the presumption of good faith operates in the manner Ms. Dallas suggests. For one, as previously discussed, Tennessee law requires both a recommendation and an election by the Board for a teacher to attain tenure status. *See* Tenn. Code Ann. § 49-2-301(b)(1)(J); Tenn. Code Ann. § 49-2-203(a)(1). Even if we were to conclude that the presumption of good faith requires us to conclude that, in the absence of specific evidence to the contrary, that the director of schools recommended Ms. Dallas for tenure, there is specific evidence in the record to show that the Board did not in fact elect to confer tenure status on Ms. Dallas. Specifically, the record contains an undisputed list of teachers that were granted tenure following the 2013-2014 school year; Ms. Dallas was not among the teachers granted tenure. As such, to the extent that any presumption requires us to assume that Ms. Dallas was granted tenure, specific evidence is contained in the record to rebut that presumption. Finally, to hold that the mere presumption of good faith allows Ms. Dallas to evade the mandates of both the Teacher Tenure Act and the multitude of caselaw interpreting it would be to frustrate the clear intent of the Tennessee General Assembly.

Here, the Board may be granted summary judgment where it demonstrates that Ms. Dallas's evidence is insufficient to establish an essential element of her claim. Affirmative action by the director of schools and the Board of Education to confer tenure is required to prevail on her claim under the Teacher Tenure Act. *See **Ray***, 72 S.W.3d at 663. Here, the Board submitted undisputed evidence that Ms. Dallas's proof was

insufficient to demonstrate that these requirements were met, including evidence that her name was not listed among those granted tenure, that Ms. Dallas never received any written or oral notification that she had been granted tenure, and that Ms. Dallas has no documents of any kind to support her claim of tenure. In order to avoid summary judgment, Ms. Dallas was therefore required to set forth specific facts showing a genuine issue for trial. *Rye*, 477 S.W.3d at 265 (stating that it is not enough to show metaphysical doubt as to the facts). Based on the foregoing, Ms. Dallas has simply failed to meet that burden. As such, the trial court did not err in denying Ms. Dallas's claim predicated on her status as a tenured teacher.

## II.

Ms. Dallas next contends that the trial court erred in granting summary judgment concerning her claim under the Continuing Contract Law, Tennessee Code Annotated section 49-5-409. At the time Ms. Dallas's employment contract was not renewed, section 49-5-409 provided, in relevant part:

> a) Teachers in service and under control of the public elementary and high schools of this state shall continue in such service until they have received written notice from their board of education or director of schools, as appropriate, of their dismissal or failure of reelection.
> (b) The notice must be received prior to June 15 to be applicable to the next succeeding school year; provided, that the director of schools may transfer any teacher from one (1) position to another at the director's option. Nothing contained in this section shall affect any rights that may have accrued, or may hereafter accrue, on behalf of any teachers or principals in any local school system under any law providing a tenure of office for the teachers and principals.

Tenn. Code Ann. § 49-5-409 (2014).[12] The trial court denied Ms. Dallas's claim on two bases. First, the trial court held that Ms. Dallas was not entitled to rely on the Continuing Contract Law where she had previously argued that she was a tenured teacher. Next, the trial court ruled that the Continuing Contract Law was not violated in this case. We respectfully disagree on both counts.

First, we address the trial court's ruling that Ms. Dallas was not entitled to rely on the Continuing Contract Law because this claim relied on "contradictory facts" to her Teacher Tenure Act claim. We agree that these claims are mutually exclusive. If Ms. Dallas was a tenured teacher, her remedy is through the Teacher Tenure Act. If, however,

---

[12] Section 49-5-409 was amended in 2015 to change the date upon which notice was required to be received. *See* 2015 Tenn. Laws Pub. Ch. 232 (S.B. 893), eff. July 1, 2015. There is no dispute that the amendment is inapplicable in this case.

- 15 -

Ms. Dallas was not a tenured teacher, she may rely solely on the Continuing Contract Law. *See Snell v. Bros.*, 527 S.W.2d 114, 116 (Tenn. 1975) ("The Continuing Contract Law does not apply to teachers who have acquired permanent tenure status and they are not subject to reelection or dismissal under its provisions."). Inconsistent pleading, however, is expressly permitted by the Tennessee Rules of Civil Procedure. Pursuant to Rule 8.05(2) of the Tennessee Rules of Civil Procedure,

> A party may set forth two or more statements of a claim or defense alternatively or hypothetically. When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as he or she has, regardless of consistency.

Based on this rule, this Court has consistently held that parties are entitled to plead inconsistent theories of the case, such as "that they were not negligent but that even if they were, their act or omission did not cause injury." *Jacobs v. Nashville Ear, Nose & Throat Clinic*, 338 S.W.3d 466, 477 (Tenn. Ct. App. 2010).

The Board concedes that Rule 8.05(2) allows alternative pleading but asserts that this doctrine does not extend past the pleading stage. Because discovery had been closed, the Board asserts that Ms. Dallas should have been required to choose a single theory. We disagree. As an initial matter, although Tennessee recognizes the election of remedies doctrine, its "sole purpose is to 'prevent double redress for a single wrong.'" *Rolen v. Wood Presbyterian Home, Inc.*, 174 S.W.3d 158, 162 (Tenn. Ct. App. 2005) (quoting *Concrete Spaces, Inc. v. Sender*, 2 S.W.3d 901 (Tenn. 1999)). As such, this Court has recognized on multiple occasions that alternative theories may be maintained as late as presentation to the jury or even following verdict. *See Concrete Spaces*, 2 S.W.3d 906 (stating that election of remedies comes into play when the jury finds two types of damages may be awarded); *Cascade Ohio, Inc. v. Modern Mach. Corp.*, No. E2009-01948-COA-R3-CV, 2010 WL 4629467, at *13 (Tenn. Ct. App. Nov. 15, 2010) ("A buyer that is damaged by a breach of contract involving a misrepresentation can elect, as late as after the verdict comes in, between rescission of the contract and recovery of the purchase price, or damages."); *Goodman v. Jones*, No. E2006-02678-COA-R3-CV, 2009 WL 103504 at *9–10 (Tenn. Ct. App. Jan 12, 2009) ("If an election must be made in order to avoid a 'double recovery,' it should be made after the jury has rendered its verdict with its answers to specific questions."). Thus, Ms. Dallas is not prevented from pursuing alternative theories at the summary judgment stage.

The cases cited by the Board do not require a contrary result. For example, in *Loveday v. Blount Cty.*, No. E2011-01713-COA-R3-CV, 2012 WL 3012631 (Tenn. Ct. App. July 24, 2012), the plaintiff cited Rule 8.05 to support his theory that he could raise claims for both inverse condemnation and nuisance. The Court noted that while Rule

8.05(2) allows alternative theories, "it does not allow a plaintiff to proceed on a nuisance theory when the allegations of the complaint allow only one conclusion, *i.e.*, that he or she knew that the damage to the property at issue is permanent." *Id*. at *5. Thus, we held that the plaintiff's claim for nuisance failed because the allegations in the complaint supported only a claim for inverse condemnation. The decision in **Loveday** to dismiss the nuisance claim was not based on the inconsistency in the two claims, but the fact that one claim was properly dismissed for failure to state a claim. Here, as previously discussed, Ms. Dallas's Teacher Tenure Act claim was properly dismissed at the summary judgment stage because she did not have tenure at the time of her dismissal.[13] As such, nothing prevents her from now relying on her alternative argument concerning the Continuing Contract Law.

Despite their argument otherwise, this case also does not involve a change in Ms. Dallas's position. She has always maintained that she is a tenured teacher, but obviously recognized that the court could come to an opposite conclusion. Indeed, the Board has maintained throughout this action that Ms. Dallas had not acquired tenure. Accordingly, she properly maintained that in the absence of tenure, she was still entitled to protection under the Continuing Contract Law. This is not a situation where a party has asserted contradictory facts to gain a tactical advantage, but where a litigant rightly recognizes that the facts may lead to two different conclusions, in the same way that a litigant may assert that he is not negligent, but also maintain that if negligent, there was no causation between the negligence and the injury. **Jacobs**, 338 S.W.3d at 477.

Finally, we note that the Tennessee Supreme Court has previously indicated that both a Teacher Tenure Act claim and a Continuing Contract Law claim may be maintained in the same action, although a teacher may only be entitled to relief under one statutory scheme. In **Snell v. Brothers**, a teacher filed a claim for reinstatement and damages relating to his dismissal as a teacher. In resolving the issue, the Tennessee Supreme Court considered both the Teacher Tenure Act and the Continuing Contract Law, noting that the latter was only applicable if the teacher was found to be non-tenured. 527 S.W.2d at 116. The Court noted that the school board did not comply with either statute, but concluded that because the teacher was non-tenured, he was only entitled to relief under the Continuing Contract Law. **Id.** at 119 ("We have concluded that Snell did not achieve permanent tenure status . . . . Its failure to notify him by April 15 that he had not been reelected resulted only in his contract being continued one more year under the Teachers Continuing Contract Law []; for breach of that contract he is entitled to damages."). As such, the Tennessee Supreme Court has indicated that these alternative claims may be maintained in a single action, as the plaintiff teacher may ultimately prevail on only a single claim. This argument is therefore without merit.

---

[13] In reaching this result, we cited opinions adjudicated on summary judgment and concluded that these cases were nonetheless instructive. As such, we similarly apply **Loveday** to this summary judgment case.

Consequently, we next consider whether the trial court erred in granting summary judgment on Ms. Dallas's Continuing Contract Claim. As previously discussed, section 49-5-409(b) states that notice of nonelection or nonrenewal "must be received prior to June 15 to be applicable to the next succeeding school year[.]" The Tennessee Supreme Court has held that the remedy for a violation of section 49-5-409(b) is monetary damages amounting to one more school year. *Snell*, 527 S.W.2d at 119 (holding that the violation of the Continuing Contract Act "resulted only in his contract being continued one more year. . . ; for breach of that contract he is entitled to damages").

Here, the following facts relative to this claim are undisputed. First, on June 12, 2015, the Board sent a certified letter to Ms. Dallas's address informing her that her teaching contract would not be renewed. There is no dispute that Ms. Dallas lived at this address and had received letters related to her employment there previously. The first attempt at delivery occurred on June 15, 2015. The letter was ultimately returned unclaimed on June 22, 2015. On August 25, 2015, Ms. Dallas received a letter from the Board concerning her teaching position.

The Board first argues that the statute should not be read to require that Ms. Dallas receive the notice prior to June 15, but merely that the Board sent the notice on this date. If the statute is construed in this matter, the Board asserts that its attempt to notify Ms. Dallas of the nonrenewal on June 15, 2015 is sufficient and Ms. Dallas's own failure to retrieve the letter should not be permitted to defeat the Board's attempt at notice. In support, the Board asks this Court to extrapolate that conclusion from other statutes that allow action to be taken after June 15 or the legislative history of the statutes.[14] We respectfully decline the Board's invitation. Although we always endeavor to construe statutes in light of their surrounding provisions, our guidepost must also be the language used in the statute. *See generally* **Keen v. State**, 398 S.W.3d 594, 610 (Tenn. 2012) (noting that our initial focus is the ordinary and natural meaning of the statute's words, and where unambiguous, "[w]e need look no further than the statute itself"). The language of section 49-5-409(b) is clear and unambiguous. Simply put, it states that the notice must be *received prior* to June 15. Here, there is no dispute that, regardless of any alleged contumacious conduct on the part of Ms. Dallas, she simply could not have received the notice prior to June 15, as June 15 was the date of the first attempt at

---

[14] For example, the Board notes that subsection (c) of section 49-5-409 provides that the Continuing Contract Law should not prevent a school board from abolishing a position after June 15, provided that the teacher receives notice of the reasons for abolishing the position and providing that the person is "entitled to the next position that the person is qualified to hold and that opens within the school system during the remainder of the school year." The Board is not entitled to rely on this section, however, as the documents submitted in support of the Board's own motion for summary judgment indicate that the position was not abolished after June 15. Even more importantly, despite the fact that Ms. Dallas was initially "excessed" due to the abolition of a position, when a position came open in the same grade that Ms. Dallas previously taught, the principal posted the open position, rather than reemploy Ms. Dallas. As such, this subsection is not relevant to our consideration of the issues presented in this case.

delivery. As such, the undisputed facts as set forth in this appeal demonstrate that the Board did not strictly comply with the plain language of section 49-5-409(b).

The Board contends, however, that even if they failed to strictly comply with the language of section 49-5-409(b), their substantial compliance is sufficient to defeat Ms. Dallas's claim under the Continuing Contract Law. The Tennessee Supreme Court recently considered a case in which the mandatory or directory nature of a provision of the Teacher Tenure Act was at issue. *See **Emory v. Memphis City Sch. Bd. of Educ.***, 514 S.W.3d 129, 144–45 (Tenn. 2017). In particular, a tenured teacher argued that Tennessee Code Annotated section 49-5-512(a) was violated when she was not provided a hearing within thirty days of the notice demanding a hearing.[15] Therein, the court described the following analysis applicable when determining whether a statute is mandatory or directory:

> In general, use of the word "shall" in a statute indicates that the statutory provision is mandatory, not discretionary. *See **Home Builders Ass'n of Middle Tennessee v. Williamson Cnty.***, 304 S.W.3d 812, 819 (Tenn. 2010) (citing ***Gray v. Cullom Machine, Tool & Die, Inc.***, 152 S.W.3d 439, 446 (Tenn. 2004); ***Stubbs v. State***, 216 Tenn. 567, 393 S.W.2d 150, 154 (1965); ***Sanford Realty Co. v. City of Knoxville***, 172 Tenn. 125, 110 S.W.2d 325, 327 (1937). "Notwithstanding this general rule, a statutory provision that pertains to the time for performing an act governed by the statute is usually construed to be directory only." ***Home Builders Ass'n***, 304 S.W.3d at 819 (citations omitted); *see also **Scheele v. Hartford Underwriters Ins. Co.***, 218 S.W.3d 636, 640 (Tenn. 2007) (quoting ***Presley v. Bennett***, 860 S.W.2d 857, 860 (Tenn. 1993); ***Trapp v. McCormick***, 175 Tenn. 1, 130 S.W.2d 122, 125 (1939)) ("Statutory provisions relating to the mode or time of doing an act to which the statute applies are ordinarily held to be directory rather than mandatory."). As this Court explained in *Myers*, "To determine whether the use of the word 'shall' in a statute is mandatory or merely directory, we look to see 'whether the prescribed mode of action is of the essence of the thing to be accomplished.'" ***Myers v. AMISUB (SFH), Inc.***, 382 S.W.3d 300, 309 (Tenn. 2012) (quoting 3 Norman J. Singer & J.D. *Singer, Sutherland Statutes and Statutory Construction* § 57:2 (7th ed. 2008)).

---

[15] Section 49-5-5012(a) provides specific guidance concerning Teacher Tenure Act hearings, including when and how the teacher should request the hearing, who may preside over the hearing, the duties of the hearing officer, how the hearing may take place, when the hearing should take place, whether the parties may be represented by counsel, the procedure applicable in the hearing, the costs allowed for witnesses, how the hearing is to be recorded, and what may be filed for consideration during the hearing.

*Emory*, 514 S.W.3d at 144 n.11; *see also* **W. Tennessee Motor Exp., Inc. v. Tennessee Pub. Serv. Comm'n**, 514 S.W.2d 742, 746 (Tenn. 1974) (concluding that both the words "must" and "shall" were mandatory); **Stiner v. Powells Val. Hardware Co.**, 168 Tenn. 99, 75 S.W.2d 406, 408 (Tenn. 1934) (equating the words "must" and shall"); **State v. Sanders**, 735 S.W.2d 856, 857 (Tenn. Crim. App. 1987) (interpreting the word "must" as equally mandatory as the word "shall").

Our supreme court further noted that "whether the statute specifies the consequence for noncompliance is a factor in determining whether a statutory provision is mandatory or directory." *Id.* at 145 n.12 (citing 3 Norman J. Singer & J.D. Singer, *Sutherland Statutes and Statutory Construction* § 57:8 (7th ed. 2008) ("the lack of stated consequences for noncompliance leads to a directory construction"); **Marks v. New Orleans Police Dep't.**, 943 So.2d 1028, 1035 (La. 2006) ("Generally, statutes using mandatory language prescribe the result to follow (a penalty) if the required action is not taken. If the terms of the statute are limited to what is required to be done, i.e., procedural rules, then the statute is considered directory even though mandatory language is employed.")). Where a statute is merely directory, substantial compliance with the statute is sufficient. *Id.* (citing **Myers**, 382 S.W.3d at 310). Ultimately, the Tennessee Supreme Court left intact this court's prior holding that the subject provision of the Teacher Tenure Act was directory where the provision contained "no specific penalty for noncompliance[,]" *id.* at 145, and the timing of the hearing was "not fundamental to the validity of the statute." **Emory v. Memphis City Sch. Bd. of Educ.**, No. W2014-01293-COA-R3-CV, 2015 WL 1934397, at *7 (Tenn. Ct. App. Apr. 29, 2015), *rev'd on other grounds*, 514 S.W.3d 129 (Tenn. 2017) (citing **Myers**, 382 S.W.3d at 309).

Although the June 15 written notice deadline contained in section 49-5-409(b) "pertains to the time for performing an act[,]" *Emory*, 514 S.W.3d at 144 n.11, we cannot conclude that this provision is merely directory. First, the statute does specify a consequence for non-compliance: section 49-5-409(b) specifically states that a notice of nonrenewal must be received prior to June 15 "to be applicable to the next succeeding school year." In other words, the result of a failure to timely send the written notice is that the nonrenewal is not effective for the next school year. *See* **Cannon Cty. Bd. of Educ. v. Wade**, No. M2006-02001-COA-R3-CV, 2008 WL 3069466, at *9 (Tenn. Ct. App. July 31, 2008) ("To be effective, a notice of non-renewal (or failure of reelection) must be received prior to April 15 to be applicable to the next school year." (citing Tenn. Code Ann. § 49-5-409(b) (2008)). Based on this language, the Tennessee Supreme Court has held that a violation of the Continuing Contract Law entitled the teacher to damages. *See* **Snell**, 527 S.W.2d at 118.

Moreover, the timely notice of nonrenewal is the "essence of the thing to be accomplished" by the Continuing Contract Law. *Emory*, 514 S.W.3d at 144 n.11. Although this Court has not specifically addressed the purpose of the section 49-5-409, another court considering a similar statute has held that the purpose of a continuing

- 20 -

contract law is to "to eliminate uncertainty and possible controversy regarding the future status of a teacher and a school with respect to the teacher's continued employment." *Krahl v. Unified Sch. Dist. No. 497, Douglas Cty.*, 212 Kan. 146, 150, 509 P.2d 1146, 1150 (1973) (interpreting a similar continuing contract law applicable to non-tenured teachers). In order to meet this purpose, the notice of nonrenewal must occur in a timely manner. Moreover, the timing of section 49-5-409 (b)'s notice requirement is the very core of the statute: the statute has been amended several times to change the date upon which the notice must be received by. *See* Tenn. Code Ann. 49-5-409 (2016) (placing the deadline at "five (5) business days following the last instructional day for the school year"); Tenn. Code Ann. 49-5-409 (2011) (placing the deadline at May 15); Tenn. Code Ann. 49-5-409 (2010) (placing the deadline at April 15). Finally, unlike the timing requirement in the Teacher Tenure Act that was determined to be merely directory in *Emory*, the timing requirement here is not merely one among a multitude of protections afforded to non-tenured teachers. *See Emory*, 514 S.W.3d at 144 (involving the timing of a hearing, rather than the timing of a notice). Rather, it is the central and nearly the sole protection offered to non-tenured teachers. *Cf. Washington Cty. Educ. Ass'n v. Washington Cty. Bd. of Educ.*, No. E2018-01037-COA-R3-CV, 2019 WL 2537864, at *1 (Tenn. Ct. App. June 20, 2019) (holding that non-tenured teachers do not have standing to file claims related to the procedure and review of a director's nonrenewal decision); *Parker v. Lowery*, No. E2012-00547-COA-R3-CV, 2013 WL 1798958, at *5 (Tenn. Ct. App. Apr. 26, 2013) ("Despite specific provisions providing a procedure in which to recommend and elect teachers for tenure, Teacher had no right of judicial review regarding the non-renewal of her contract and her corresponding failure to receive tenure because she was a probationary employee.").

Although other courts have not specifically addressed this issue, we conclude that prior opinions support our conclusion in this case. First, in *Snell*, the Tennessee Supreme Court indicated that the teacher was entitled to damages for the violation of the Continuing Contract Law where the board of education "missed the cut-off date of April 15 for notifying non-tenured teachers of failure of reelection[.]" *Snell*, 527 S.W.2d at 116. A review of the facts of *Snell* show that the plaintiff teacher had actual notice of the nonrenewal well before the "cut-off" date. *Id.* at 115–116. Additionally, the teacher was notified by written letter of the nonrenewal less than fifteen days following the statutory date. *Id.* at 115. Despite this actual notice and a belated attempt to comply with the statute, the Court concluded that the Continuing Contract Law had been violated and the plaintiff teacher was entitled to damages. *Id.* at 118–19. This Court's opinions have followed suit, generally holding that a timely notice under section 49-5-409(b) is a condition precedent to dismissal under the Continuing Contract Law. *Cannon Cty. Bd. of Educ. v. Wade*, No. M2006-02001-COA-R3-CV, 2008 WL 3069466, at *10 (Tenn. Ct. App. July 31, 2008) (citing *Snell*, 527 S.W.2d at 116) ("Under authority interpreting existing statutes governing teacher tenure and teacher contracts, a non-tenured teacher may be dismissed without cause by written notice that the teacher has not been re-elected

to teach the next school year, *as long as* the notice complies with the time limits set in [section] 49-4-409.") (emphasis added); ***Malone v. Shelby Cty. Bd. of Educ.***, 773 S.W.2d 256, 259 (Tenn. Ct. App. 1989) ("The tenure statute read in conjunction with the termination of contract statute leads to the conclusion that a school board has the right to dismiss or fail to reinstate the contract of a non-tenured teacher, *provided* the school board gives the teacher written notice prior to April 15 of the year of their contract.") (emphasis added); *see also* ***Washington Cty. Educ. Ass'n***, 2019 WL 2537864, at *3 (citing the above language from ***Cannon*** favorably). These opinions therefore lend support to the conclusion that the "cut-off" date provided in section 49-5-409(b) is mandatory, rather than directory.

Based on the foregoing, we hold that the procedure under section 49-5-409(b) is mandatory. As such, the Board was required to strictly comply with the statute's mandates. *See **Myers***, 382 S.W.3d at 310 ("Because these requirements are mandatory, they are not subject to satisfaction by substantial compliance."). The undisputed facts do not show that the Board strictly complied with section 49-5-409(b) by notifying Ms. Dallas of her nonrenewal prior to June 15, 2015. Instead, the earliest Ms. Dallas could have been notified of her nonrenewal was June 15, 2015, past the "cut-off" date contained in the statute. ***Snell***, 527 S.W.2d at 116. As such, the trial court erred in granting summary judgment to the Board on this claim.[16]

## CONCLUSION

Based on the foregoing, the judgment of the Shelby County Chancery Court is affirmed in part and reversed in part. Costs of this appeal are taxed one-half to Appellant Pamela Dallas, and one-half to Appellee Shelby County Board of Education, for all of which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE

---

[16] We note that Ms. Dallas filed no motion for summary judgment on this issue. In addition, in her brief, Ms. Dallas concedes that a determination of her damages related to the violation of the Continuing Contract Law is outstanding.

- 22 -